**WESTCHESTER PLASTICS OF OHIO, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 17990.**

United States Court of Appeals Sixth Circuit.

Oct. 18, 1968.

J. Mack Swigert, Cincinnati, Ohio, for petitioner.

William H. Carder, N.L.R.B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Warren M. Davison, Atty., N.L.R.B., Washington, D. C., on the brief), for respondent.

Before O'SULLIVAN, PHILLIPS and PECK, Circuit Judges.

PECK, Circuit Judge.

Westchester Plastics of Ohio, Inc., the petitioners to this court, and the Union, United Electrical Radio and Machine Workers of America, on January 19, 1966, executed a stipulation for certification on the basis of a consent election. The consent election was held on February 4, 1966, and all 41 of the eligible voters cast ballots. One ballot, that of Larry Stolzenburg, was challenged by the Board agent because he had arrived after the close of the polls. The Board agent told Stolzenburg that he could vote on a challenged ballot or he could wait and cast a nonchallenged ballot at the other plant. For reasons of personal convenience, Stolzenburg elected to cast the challenged ballot.

After the balloting, but before the ballots were counted, Petitioner and the Union agreed to exclude Stolzenburg's ballot upon the Petitioner's representation that Stolzenburg's employment was terminated before the election. Both parties initialled the envelope containing Stolzenburg's ballot and they placed this notation on the envelope "agreed ineligible, no longer employed." The agreement to exclude Stolzenburg's ballot did not include any reference to Stolzenburg being late to the polls. The tally, excluding Stolzenburg's ballot, showed 20 votes for the Union and 20 votes against it.

Stolzenburg was employed full time as a fireman for the City of Wapakoneta, and on his days off (starting in October 1965) he worked part time for the Petitioner. Stolzenburg's days off from his full time job changed every two weeks, but he averaged 16 to 17 hours per week at Westchester Plastics. As the Petitioner's business declined around December 1965, Stolzenburg adopted the practice of calling the Company rather than reporting on his off days, in order to find out if he was needed.

Stolzenburg continued to work in this manner until January 24, 1966, on which date he worked 5½ hours. He did not work again until after the representation election when he was told to report on February 9, 1966. Upon being discovered by Rhind, the plant manager, Stolzenburg was sent home. It was explained to him that full-time employees were hired and that part-time employees would not be needed.

On February 10, 1966, the Union filed timely objections to conduct affecting results of the election. The Union's main contention was that Stolzenburg was eligible to vote and his ballot should have been counted since the Petitioner misrepresented Stolzenburg's status as an employee before the ballots were counted and that this misrepresentation induced the Union to agree after the election to Stolzenburg's ineligibility. On March 17, 1966, the Regional Director overruled the Union's objection and concluded that the parties should be bound by their post-election agreement as to the ineligibility of Stolzenburg.

The Union filed exceptions to the Regional Director's report and on June 1, 1966, the Board directed that a hearing be held. Subsequently, the Hearing Officer issued his report on August 30, 1966, finding that Stolzenburg was an employee on the day of the election and that the post-election agreement was not binding on the Union. The Hearing Officer recommended that the challenge to the ballot of Stolzenburg be overruled and that his ballot be opened and counted.

On December 9, 1966, the Board adopted the findings and recommendations of the Hearing Officer and directed the Regional Director to open and count the ballot of Stolzenburg. The Board found that the post-election agreement as to Stolzenburg's ineligibility was induced by the Petitioner's misrepresentation, innocent or otherwise, and the Board gave no weight to the post-election agreement.

The Regional Director counted Stolzenburg's ballot and on December 21, 1966, issued a Certificate of Representation to the Union. The Petitioner has since that time refused to bargain with the Union. The Board then issued a cease and desist order against Westchester Plastics of Ohio, Inc. on June 8, 1967. 165 NLRB No. 30. Westchester Plastics filed a petition for review on June 12, 1967 under Section 10(f) of the National Labor Relations Act, 29 U.S.C. § 160(f).

The basic issue as to whether the Board erred in its determination to certify the Union must be resolved on the basis of whether or not the Board abused its discretion in the disposition of the challenged ballot of Stolzenburg, and whether or not Stolzenburg was ineligible to vote because he was an irregular, part-time employee with no expectancy of recall.

■ The evidence and arguments present two conflicting views to the proceedings that led up to the parties' post-election agreement. The parties are also in disagreement over the employment status of Stolzenburg at the time of the pre-election conference and of the election. In reviewing the Board's conclusions as to these conflicts we must keep in mind the fact that "[t]he Board's choice between two conflicting views may not be set aside even though the court would justifiably have made a different choice had the matter been before it de novo." N.L.R.B. v. Bendix Corp., 299 F.2d 308, 310 (6th Cir.), cert. denied, 371 U.S. 827, 83 S.Ct. 47, 9 L.Ed.2d 65 (1962). At the pre-election conference, Petitioner claims it forewarned Toth, the Union representative, that it would challenge the ballot of Stolzenburg if he tried to vote since his employment had been terminated. Toth testified that no such statement was made to him. The Hearing Officer credited Toth's denial.

■ The Petitioner also claims that Rhind terminated the employment of Stolzenburg in the middle of January 1966. Rhind told leadman Truesdale to communicate this to Stolzenburg, but he inadvertently failed to do so. Since Stolzenburg did not work from January 24 to February 4, the Petitioner claims that his employment was terminated or that he was laid of without reasonable expectancy of recall and that Stolzenburg's employment on February 9 was a mistake. The Hearing Officer credited Stolenzburg's assertion that he was not told of any termination or layoff before the election. The credibility of witnesses and the reasonable inferences to be drawn from the evidence are matters for determination by the Board. Champion

Papers, Inc. v. N.L.R.B., 393 F.2d 388, 394 (6th Cir. 1968); United Fireworks Mfg. Co. v. N.L.R.B., 252 F.2d 428, 430 (6th Cir. 1958); N.L.R.B. v. Ridge Tool Co., 151 F.2d 947, 948 (6th Cir. 1945).

■ The Hearing Officer's finding, which the Board adopted, was that Stolzenburg was an employee at the election date. If this finding was supported by substantial evidence on the record considered as a whole, the reviewing court is not free to substitute their judgment. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The Hearing Officer based his finding on these facts:

1. Stolzenburg worked 5½ hours on January 24, 1966, although Rhind testified that Stolzenburg's employment was terminated in the middle of January 1966;

2. Stolzenburg was never informed before February 9, 1966, that his employment was terminated;

3. On February 9, 1966, Stolzenburg called and was told to report for work. He worked 2½ hours before being asked to leave;

4. Stolzenburg was told by Howard, the Company's production manager, that he was temporarily laid off and it would last a month. Howard testified that he said nothing to Stolzenburg. The Hearing Officer credited Stolzenburg;

5. Stolzenburg's name appeared on the eligibility list prepared by the Company for the election;

6. Collins, the Company's attorney, told Toth that Stolzenburg's employment terminated at the pre-election conference February 4, 1966. Toth denies that this was said. The Hearing Officer credited Toth;

7. Petitioner did not remove Stolzenburg's name from the voter eligibility list. For the February 4, 1966, election list, the Company removed the name of Copland, a deceased employee, from the list sent to the Regional Director on January 12, 1966, but the Company did not take Stolzenburg's name off;

8. Stolzenburg had a timecard for the week ending February 15, 1966;

9. Stolzenburg said he worked 16 to 17 hours a week from October or November 1965 to January 24, 1966. He did not work the two weeks between January 24 and the election;

10. Petitioner put the name of Donald Arnett on the second eligibility list; he was a part-time worker who worked Fridays and occasional Saturdays.

■ Petitioner contends that Stolzenburg was ineligible to vote because he was an irregular, part-time employee. The test for determining eligibility is the individual's actual status on the eligibility date and election date. Sylvania Electric Products, Inc., 119 NLRB 824, 831 (1957). Casual employees who perform work at only intermittent periods have been excluded by the Board from the bargaining unit. G. C. Murphy Co., 128 NLRB 908 (1960). As stated in Shoreline Enterprises of America, Inc. v. N.L.R.B., 262 F.2d 933, 944, 69 A.L.R. 2d 1174 (5th Cir. 1959), the eligibility to vote in an election to determine a bargaining agent depends on whether an employee is sufficiently concerned with the terms and conditions of employment in a unit to warrant his participation in the selection of a bargaining agent. The Board has established a policy of including regular part-time production employees in a bargaining unit with full-time production employees. See Indianapolis Glove Co. v. N.L.R.B., 460 F.2d 363 (6th Cir. 1968), and the cases cited therein. In *Indianapolis Glove Co.*, we stated that the tests used by the Board in making this determination are whether the part-time employees work at regularly assigned hours a substantial number of hours each week, per-

form duties similar to those of full-time employees, and share the same supervision, working conditions, wages and fringe benefits. These factors constitute the community of interest with full-time employees that entitles the part-time employees to be included in the unit. H. W. Elson Bottling Co., 155 NLRB 714, 724 (1965). Other full-time employment does not relegate a part-time employee to the category of a casual employee with no real interest in the unit. Booth Broadcasting Co., 134 NLRB 817 (1961); Lancaster Welded Products, Inc., 130 NLRB 1478 (1961); V.I.P. Radio, Inc., 128 NLRB 113 (1960).

Stolzenburg worked on an irregular schedule at the Company in order to correlate his hours there with the fire department. The Company asked him for a schedule of days that he would be off, but he failed to supply it and thus Rhind classified him as an irregular part-time employee whom he "would pick up from the street." The Company would have classified him as a regular part-time employee if he had tendered his schedule of off days. This arrangement would not constitute regularly assigned hours within the test pronounced in *Indianapolis Glove Co.*, but Stolzenburg did regularly work a substantial number of hours, 16 to 17 hours a week until September 24, 1966. He also performed the duties similar to the full-time employees and shared in the same supervision, working conditions, and wages. There is no mention of whether he likewise shared in the fringe benefits.

Despite the absence of the regularly assigned hours and the fringe benefits, Stolzenburg meets the other established tests in *Indianapolis Glove Co.* and he should be considered a regular part-time employee with a sufficient community of interest to entitle him to be included within the unit.

Petitioner next claims that Stolzenburg was discharged or at least laid off without reasonable expectancy for recall. In order for the termination of an employment relationship to be ef-

fective, the intent to terminate must be communicated to the other party by some affirmative action. Miami Rivet Co., 147 NLRB 470, 483–84 (1964). Stolzenburg was not told he was laid off, but the Petitioner claims that the determination to lay him off was made in the middle of January 1966. Despite this contention, Petitioner called him in to work on January 24, 1966, a date considerably after the middle of January. From January 24 to the election date, Stolzenburg continued to call in, but he was not told that he was laid off. The probable motive for not telling him was that the Company planned to hire full-time employees in the future and the Company wanted to keep him available for work when he was needed. Stolzenburg also had a reasonable expectancy of future employment since Truesdale kept accepting his calls for work. No other conclusion is consistent with these facts.

The Petitioner also claims that Stolzenburg was ineligible to vote because he did not cast his ballot during the voting period. The fact that he voted late was not in dispute. The Hearing Officer stated that:

"Depriving a person of his vote on a technicality when the Board agent played a considerable part in creating the situation seems rather harsh, and hardly in accord with the Board's policy of affording all eligible employees ample opportunity to express their desires as to representation, by secret ballot."

It is the Board's practice, in the absence of unusual circumstances, not to extend voting periods beyond the time specified. Glauber Water Works, 112 NLRB 1462, 1463 (1955). The Board agent can allow late employees to cast ballots in the exercise of his discretion. NLRB v. Wilkening Mfg. Co., 207 F.2d 98, 102 (3rd Cir. 1953); Hanford Sentinel, Inc., 163 NLRB No. 135 (1967).

In all three of the latter cases, the Board and the Court evaluated the circumstances for the late voting in order to determine whether the Board

agent exercised his discretion correctly. The circumstances concerning the casting of Stolzenburg's ballot were:

1. He needed transportation to and from the firehouse;

2. He was working a regular shift at the fire department on the election date, and needed permission to leave, besides needing a replacement for the time he was absent from the firehouse;

3. The ballot box was not opened, nor had the talley of the ballot started at his arrival;

4. He was one minute late; and

5. Only a brief period of voting was provided, 15 minutes at the Cemetery Road plant.

The Petitioner relies on Dornback Furnace & Foundry Co., 115 NLRB 350 (1956), but there the late employee gave no sufficient reason for not having cast his ballot during the scheduled period. The circumstances under which Stolzenburg voted late in the present case gave the Board the discretionary right to determine whether the vote should be counted, and its exercise of that discretion will not be disturbed.

The Petitioner's final contention is that irrespective of the outcome on the former issues, the Union should be bound by its post-election agreement as to Stolzenburg's ineligibility. The basis for this agreement was that the Petitioner told the Union representative that Stolzenburg's employment had been terminated. The Regional Director found a credibility issue as to whether Stolzenburg was terminated prior to the election, but he nevertheless held the parties bound by the agreement. The Board, adopting the Hearing Officer's finding that Stolzenburg was employed at the election date, added that the post-election agreement was induced by the Petitioner's misrepresentation, innocent or otherwise, and it gave no weight to the agreement.

The credibility issue is based on the Petitioner's contention that the Union representative was told at the pre-election conference of Stolzenburg's termination and the challenge to his ballot if he voted. Thus, the Petitioner states that it put the Union on notice, and gave it time to investigate before the post-election agreement was entered into. The Union representative's testimony to the effect that nothing was said at the pre-election conference concerning this matter was credited. The testimony of Rhind (Company manager), Collins (Company attorney) and Greer (Company observer) was not credited.

The Petitioner cites numerous cases where the Board and the Courts have upheld pre-election agreements. The Petitioner also contends that there is no reason for enforcing pre-election agreements and not enforcing post-election agreements, since the agreement here was made before the opening of the ballots. The Board seemed to adopt this reasoning, even though it found the misrepresentation of the Petitioner to be the motive for the Union to enter into the agreement. The resolution of this last issue depends on whether Stolzenburg was an employee or not on the election date. If he was not an employee, then there could not be a misrepresentation as contended by the Union, but if he was an employee, then the Petitioner did misrepresent Stolzenburg's status at the post-election agreement.

The Board has refused to bind the parties in situations where the end result would be in contravention of the Act or established Board policy. Norris-Thermador Corp., 119 NLRB 1301, 1302 (1958). In the present case, the Board contends that the denial of an otherwise eligible employee's right to participate in the selection of a bargaining agent, as a direct result of the Petitioner's misrepresentation of his status to the Union representative, is in derogation of goals embodied in the Act. The end result has the effect of disenfranchising an eligible employee if there was a misrepresentation.

The Hearing Officer found Stolzenburg to be an employee at the date of the election and he resolved the

credibility issue in favor of the Union. The Board adopted his opinion. In finding that Stolzenburg was an employee, and by believing that the Union representative, without prior knowledge, entered into the post-election agreement on the Petitioner's representation, the Board properly gave no weight to the post-election agreement.

Enforcement granted.