**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**UNION CARBIDE CARIBE INC., Respondent.**

No. 7398.

United States Court of Appeals, First Circuit.

Heard Feb. 5, 1970.

Decided March 11, 1970.

Warren M. Davison, Atty., Washington, D. C., with whom Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Michael F. Rosenblum, Atty., Washington, D. C., were on brief, for petitioner.

William C. Treanor, New York City, with whom Jack P. Simpson, New York City, and Jose Guillermo Vivas, Ponce, P. R., were on brief, for respondent.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

This is a petition by the NLRB for enforcement of its order that the company[1] cease and desist from certain unfair labor practices, bargain collectively with the union,[2] and, if an understanding is reached, embody such understanding in a signed agreement.[3]

In March 1967, the union filed a representation petition with the Board seeking certification as the exclusive bargaining representative of the company's production and maintenance employees at its plant at Barrio Tallaboa, Puerto Rico. The company agreed to a consent election, which was held on May 3 and 4, 1967. The union won the election by a vote of 130 to 126. After a hearing the company's objection to the conduct of the election was overruled and the union was certified on February 20, 1968. The company, on March 15, 1968, announced that it would refuse to recognize the union pending litigation in the courts of the validity of the election. On March 28, it denied the union's formal request for bargaining. A short time later, after notice to the union, the company instituted increases in wages and benefits which affected the unit employees.

Subsequently the General Counsel issued a complaint, charging the company with unfair labor practices under §§ 8(a) (1) and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a) (1) and (5) (1964). The specific violations alleged were the company's refusal to bargain and its unilateral increase in wages and benefits. The company's answer admitted its refusal to bargain as well as the institution of the increases, but denied that it had violated the Act, asserting by way of defense that the union had failed to renew its bargaining request during the interval between notice and institution of the increases. A subsequent motion to amend the answer to add an additional defense, i. e., that a petition to amend the certification by the union had raised doubt and confusion as to the identity of the bargaining representative, was denied. The Board

---

1. Union Carbide Caribe Inc.

2. Union Independiente de Trabajadores de Produccion y Mantenimiento.

3. The Board's decision is reported at 173 N.L.R.B. No. 131, 1968–1 CCH NLRB ¶ 22,602 (1968).

granted the General Counsel's motion for summary judgment. The company now challenges both the representation proceedings and the Board's granting of summary judgment as to charges based on the wage increase.

We deal first with the attack on the representation election. Just before the start of the election the Board agent who conducted the election, one Fernandez, went outside the building in which the balloting was to take place and addressed an assemblage of employees. He testified that he said, among other things, the following:

> "Yes means that if you want to be represented by the union for discussing the collective bargaining agreement regarding wages and conditions of employment, you have to vote under yes. If you don't want to be represented by the Union for discussing the collective bargaining agreement, wages and conditions of employment, vote under no. Make only one mark in either yes or no, inside the booth, because this is a secret election and nobody here wants to know how you are voting. Please fold the ballot inside the booth, after you make only one mark, as follows, in four pieces—like this [witness folds the ballot]."

This testimony is disputed by the company. Seven witnesses to the speech testified that Fernandez had said, in substance, that those who wanted better wages and better working conditions should vote yes (for the union). Fernandez's version was corroborated by only one witness, and then to only a limited extent. Several others who were present were unable to recall what Fernandez had said or could not hear him at the time. The trial examiner credited Fernandez' testimony and overruled the company's objection. His report was adopted by the Board.

■ The company maintains that the Board's finding is unsupported by substantial evidence on the record taken as a whole. We disagree. The crux of the matter is whether Fernandez or the company's witnesses correctly testified to the content of the speech. This is purely an issue of credibility—a matter for the Board. Reviewing courts will set aside such findings only when they "overstep the bounds of reason."[4] We have reviewed the record in detail and find nothing to indicate that Fernandez' testimony is so inherently unreliable as to require us to set aside the Board's finding. Accordingly, the Board's overruling of this objection will not be disturbed.

The company argues, in the alternative, that Fernandez' speech was improper, regardless of its content. It relies primarily on the Board's decision in Milchem, Inc., 170 N.L.R.B. No. 46, 1968–1 CCH NLRB ¶ 22,245 (1968).

In *Milchem*, the Board set aside an election where the secretary-treasurer of the union spoke to a group of employees just before they voted without inquiring into the substance of his remarks. It based its decision on the premise that voters should be free from last-minute interference and added that:

> "[t]his rule is nothing more than a preventive device to enforce the ban against electioneering in polling places normally applied in * * * our representation elections. * * * [B]y attaching a sanction to its breach, the rule assures that the parties will painstakingly avoid casual conversations which could otherwise develop into undesirable electioneering or coercion." 170 N.L.R.B. No. 46, 1968–1 CCH NLRB ¶ 22,245 at 29,306.

■ It is evident from the quoted language that *Milchem* was intended by the Board to be applied only to remarks made by parties—the union and the employer. Moreover, reason dictates that this per se rule not apply to Board agents. Otherwise, any "non-trivial" comment or instruction would invalidate an election and effectively cripple the Board in carrying out its statutory duties. The *Milchem* doctrine is therefore of no assistance to the company.

---

4. NLRB v. Die Supply Corp., 393 F.2d 462, 467 (1st Cir. 1968).

The company also makes much of the fact that Fernandez characterized his remarks as a "pep talk." It argues that such a speech is "beyond the pale of proper instructions to prospective voters" and violates the Board's policy that representation elections be conducted in "laboratory conditions." This adds nothing to the company's case.

■ Fernandez' characterization of his speech is of no import whatsoever. He simply explained the meaning of a vote for each of the alternatives and instructed the employees on how to mark and fold the ballot. The Board has broad discretion in these matters.[5] We think it was justified in adopting the trial examiner's conclusion that the speech simply fulfilled the agent's duty to explain the election procedure and also in rejecting the argument that Fernandez' speech injected an appearance of irregularity into the election in violation of Board policy.

The company's final objection to the election is that while making the speech discussed above, Fernandez left the ballot box unattended. It argues that under Austill Waxed Paper Co., 169 N.L.R.B. No. 169, 1968–1 CCH NLRB ¶ 22,192 (1968), the election must be set aside.

■ Austill is inapposite here. In that case the attending officials left the ballot box unattended during the voting period. The Board concluded that such an occurrence cast doubt on the integrity of the election and warranted the result being set aside. In the instant case, Fernandez left the box in the custody of both the company and union observers before the voting began and retained personal possession of all the ballots. Therefore, unlike Austill, there is not even the faintest whisper of impropriety here.

We conclude, therefore, that all of the company's objections to the representation election are without merit. Hence, the Board properly certified the union and found that the company committed an unfair labor practice by refusing to bargain.

The company also challenges the Board's granting of the General Counsel's motion for summary judgment on the count pertaining to its institution of wage and benefit increases after its refusal to recognize the Union. It makes several points. First, it notes that it informed the union of the proposed increase six days before the effective date of the increases and that the union failed to object to or attempt to bargain about the proposal. The company seeks to conclude that this satisfied its duty under the Act and/or amounted to a waiver on the part of the union. We do not agree.

■ On March 15, 1968, shortly after certification, the company announced its refusal to recognize the union pending the termination of litigation of its objections to the representation election. Notice of the proposed increases, effective on April 29, was given to the union on April 23. At that time, litigation of the company's election objections had not been concluded and the company did not express a willingness to negotiate the terms of its proposal. Hence, there was no indication that the company's previously announced position had changed in any respect.

In some circumstances an employer's duty to bargain might be discharged by informing the union of proposed wage changes and then awaiting the union's response. This might be so particularly where the parties had a history of bargaining in which the custom and usage clearly established that the company was willing to bargain about any proposal concerning mandatory subjects of collective bargaining. The employer's duty to bargain, however, is not satisfied by mere notice of a proposal where, as here, its refusal to negotiate on any point is manifest. The company had previously announced that its willingness to nego-

5. *See, e. g.*, NLRB v. A. J. Tower Co., 329 U.S. 324, 330, 67 S.Ct. 324, 91 L.Ed. 322 (1946); Independent, Inc. v. NLRB, 406 F.2d 203 (5th Cir. 1969); NLRB v. Ideal Laundry & Dry Cleaning Co., 330 F.2d 712, 715 (10th Cir. 1964).

tiate with the union was contingent upon the termination of pending litigation. At the time the notice was given the union that conditon had not been met. Taken together with the company's recent refusal to recognize the union, the union could not be expected to make what promised to be a totally futile gesture —another demand for bargaining. The company, therefore, failed to satisfy its obligations under the Act.[6]

The same considerations dictate a holding that the Board was justified in concluding that the union did not waive its collective bargaining rights. The waiver of rights under the Act must be clearly established.[7] Given the company's standing refusal to bargain, the Board was amply justified in finding that the union's silence in the face of the company proposal did not manifest an intention to forego its right to bargain.

■ The company's second objection to the summary judgment procedure is that it was denied an opportunity to introduce evidence justifying its unilateral wage and benefit increases on grounds that the change was consistent with long-established company practice and was occasioned by legitimate business reasons. We find it unnecessary to consider these arguments, however, for the company has failed to exhaust its administrative remedies in this regard.

Section 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e) (1964), which deals with enforcement of Board orders in unfair practices cases, provides in part:

"No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."

A diligent search of the record discloses the fact that the company never raised these arguments before the case reached this court. Moreover, there is no suggestion that any extraordinary circumstances exist which justify the failure. Accordingly, we do not consider these contentions. NLRB v. Saxe-Glassman Shoe Corp., 201 F.2d 238, 241 (1st Cir. 1953); 3 K. Davis, Administrative Law Treatise § 20.06 (1958).

■ The company's final contention —raised for the first time on August 2, 1968, in a motion to amend its answer before the Board—is that there was then doubt as to the identity or existence of the union. The company argues that a petition to amend its certification by the union, apparently to reflect a new affiliation, rendered summary judgment improper. The Board rejected the argument on the ground that the company was charged with an initial refusal to bargain beginning on March 15, 1968, and that its previous conduct could not be excused by doubts as to the identity of the union arising five months later. It suggested that questions concerning the effect of the union's petition be resolved at the compliance stage of the proceeding, denied the motion to amend, and granted summary judgment.

We see no reason to disturb the Board's action. The company has refused to bargain with a duly certified representative of its employees. The Board has

---

6. The company opposes this conclusion by contending that there is no support in the record for the position "that where the Company has never shown a willingness to recognize the union, it must be inferred that if the union made any request to bargain it would be a totally futile gesture." Resp.Br. 33. Its argument misstates the case. There is more here than the mere failure of an employer to indicate a willingness to bargain. The company affirmatively stated that it *would not* bargain until pending litiga-

tion had terminated. Once it took that position it had an obligation to make clear that its attitude had changed, at least until the litigation had terminated, thereby satisfying its condition precedent to negotiations and warranting the inference that it was willing to bargain.

7. *See* NLRB v. Taylor, 338 F.2d 1003 (5th Cir. 1964); NLRB v. Item Co., 220 F. 2d 956 (5th Cir.), cert. denied, 350 U.S. 836, 76 S.Ct. 73, 100 L.Ed. 746 (1955).

ordered it to bargain. If, in its attempt to comply with that order, the company finds that the very identity of the certified representative has changed, it may then raise its objections. However, we will not further delay these proceedings by a remand to the Board at this time.

The company's objections to the Board's granting of the motion for summary judgment are without merit.

The Board's order will be enforced.