**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**NEW ENGLAND LITHOGRAPHIC COMPANY, INC., Respondent.**

**No. 78–1122.**

United States Court of Appeals, First Circuit.

Argued Sept. 12, 1978.

Decided Dec. 14, 1978.

Corina Metcalf, Atty., Washington, D. C., with whom John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, John H. Ferguson and Elizabeth Bunn, Attys., Washington, D. C., were on brief, for petitioner.

Carol Chandler, Boston, Mass., with whom Robert Chandler, and Stoneman,

* Sitting by designation.

** Of the Western District of Pennsylvania, sitting by designation.

1. The Union and the Company stipulated that the appropriate unit consisted of:

Chandler & Miller, Boston, Mass., were on brief, for respondent.

Before KUNZIG, Judge, Court of Claims,* BOWNES, Circuit Judge, DUMBAULD, District Judge.**

BOWNES, Circuit Judge.

The National Labor Relations Board (Board or NLRB) seeks enforcement of its order that New England Lithographic Co., Inc. (Company) cease and desist from engaging in the unfair labor practice found by the Board, that it bargain with the Graphic Arts International Union, Local No. 300, AFL–CIO (Union), and that it post appropriate notices. The Board found that, after a consent election, the Company refused to bargain collectively with the Union in violation of 29 U.S.C. § 158(a)(5) and (1). The Company maintains that it need not recognize the Union because two of the decisive votes were cast for the Union by ineligible temporary employees, Joseph Riley and Nicholas Costa. (Riley and Costa) This circuit is, therefore, faced for the first time with determining the standard of voting eligibility for temporary employees.

On March 30, 1976, the Union petitioned the Board for an election, which was held in the stipulated unit [1] on June 4, 1976. The results were nine votes against the Union and eight votes in favor, with four challenged ballots. Since the challenged ballots were sufficient to affect the result of the election, the Regional Director conducted an investigation of the challenges pursuant to the Board's Rules and Regulations, 29 C.F.R. § 102.69(c).

Two of the four challenges to the ballots were sustained and these ballots are not at issue here. This case involves the challenged ballots of Riley and Costa. Neither employee was included on the Company's voter eligibility list, since the Company was

All regular full-time and regular part-time lithographic production employees employed at the employer's 9–27 Melcher Street, Boston, Massachusetts location, but excluding all other employees, guards and supervisors as defined in the Act.

of the view that both were ineligible temporary employees. In addition, the Company maintained that Costa was discharged after the eligibility date and then rehired prior to the election so that he was not within the stipulated unit.

The Regional Director's investigation led him to conclude that Riley was not an ineligible temporary employee so he recommended that the challenge to his ballot be overruled. As to Costa's eligibility, the Regional Director suggested that a hearing be held because there were credibility issues involved.

The Company took exceptions to the Regional Director's report, arguing that a hearing should be held concerning Riley. The Board considered and rejected these exceptions, since they presented no substantial and material issues. The N.L.R.B. adopted the Regional Director's finding that Riley was an eligible voter. The Board ordered a hearing on the challenged ballot cast by Costa.

After conducting a hearing, the hearing officer recommended that the challenge to Costa's ballot be overruled. The Company filed exceptions and a supporting brief and the Union filed a Memorandum in Opposition in response. The Board adopted the hearing officer's findings with a slight modification and ordered that the ballots of Riley and Costa be opened and a revised tally prepared.

With the votes of Riley and Costa now included, the Union prevailed in the election, ten votes to nine, and was certified by the N.L.R.B. on July 7, 1977.

Because the Company refused to bargain with the Union, an unfair labor practice complaint was issued. Subsequently, General Counsel filed a Motion for Summary Judgment, which was granted by the Board on December 7, 1977. The Board found that, in its Response to Notice to Show Cause, the Company was attempting to relitigate the same issues concerning Riley and Costa which it raised in the earlier representation proceedings. The order which the Board seeks to enforce accompanied the decision.

On appeal, the Company argues that the N.L.R.B. abused its discretion in refusing to hold an evidentiary hearing regarding the voting eligibility of Riley and in finding that both Riley and Costa were not ineligible temporary employees. In addressing these issues, we are guided by the analytical framework recently set out in *N. L. R. B. v. S. Prawer & Co.*, 584 F.2d 1099, at 1101 (1st Cir. 1978).

While many cases may be decided without detailed separate analysis of the issues to be reviewed, there is a two-tiered process involved: we review the fact findings of the Board in its petition for enforcement of its orders on the unfair labor practices complaint pursuant to the standard articulated in the statute, 29 U.S.C. § 160(e), and enunciated in *Universal Camera Corp. v. N. L. R. B.*, 340 U.S. 474, 487–488 [71 S.Ct. 456, 95 L.Ed. 456] (1951), as to whether the Board order finds substantial evidence in the record as a whole. Since Board rulings on the certification challenge are not reviewable directly, *A. F. L. v. N. L. R. B.*, 308 U.S. 401, 406 [60 S.Ct. 300, 84 L.Ed. 347] (1940), but only to the extent that the unfair labor practices complaint rests upon them, *Pittsburgh Plate Glass Co. v. N. L. R. B.*, 313 U.S. 146, 154 [61 S.Ct. 908, 85 L.Ed. 1251] (1941), our standard of review on that question is restricted to an analysis of whether the Board abused its discretion in certifying the election. *N. L. R. B. v. O. S. Walker Co., Inc.*, 469 F.2d 813, 817 (1st Cir. 1972). We also determine whether the Company's assertion that it was denied due process has merit. *Pittsburgh Plate Glass Co. v. N. L. R. B., supra*, 313 U.S. at 154–155 [61 S.Ct. 908].

The National Labor Relations Act § 9(c), 29 U.S.C. § 159(c), vests in the Board the power to conduct and investigate union elections. This power is not of a specific, circumscribed nature, but is far ranging as the Court noted in *N. L. R. B. v. A. J. Tower Co.*, 329 U.S. 324, 330, 67 S.Ct. 324, 328, 91 L.Ed. 322 (1946). "As we have noted before, Congress has entrusted the Board with a wide degree of discretion in

establishing the procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees." (citations omitted). Pursuant to this grant of authority, the Board established guidelines to determine voter eligibility. As a general rule, an employee must work during the period, including the eligibility date and the election date, to vote in a representation election. *N. L. R. B. v. Adrian Belt Co.*, No. 76–3422, 578 F.2d 1304, 1308 (9th Cir. 1978); *Westchester Plastics of Ohio, Inc. v. N. L. R. B.*, 401 F.2d 903, 907 (6th Cir. 1968); *Macy's Missouri-Kansas Division v. N. L. R. B.*, 389 F.2d 835, 842 (8th Cir. 1968); *Trailmobile Division, Pullman, Inc. v. N. L. R. B.*, 379 F.2d 419, 423 (5th Cir. 1967).

The Board's standard is not a rigid one and there are exceptions to this general rule. As one exception, the Board's standard changes in situations where the employees did not work during the payroll period due to illness,[2] leave of absence, or temporary layoff.[3] In these cases, the Board looks at the employee's reasonable

expectation of returning to work in determining whether that employee should be permitted to vote. As explained by the court in *N. L. R. B. v. General Tube Co.*, 331 F.2d 751, 753 (6th Cir. 1964), "[t]he rationale for the standard used in these cases seems to be simply that no more objective standard was available."[4]

The Board has fashioned a third test for determining voter eligibility of "temporary" employees, *e. g.*, those workers hired either expressly or impliedly as less than permanent workers. In *Personal Products Corp.*, 114 N.L.R.B. 959, 960 (1955), the Board enunciated this standard. "The Board has held that temporary employees who are employed on the eligibility date, and whose tenure of employment remains uncertain, are eligible to vote."

The Company stressed in its brief, and more particularly in oral argument, that the Board has not been consistent in applying a standard to these temporary employee cases. Cases in which the Board applied the reasonable expectation of permanent employment standard were cited,[5] along with

---

**2.** In *Whiting Corp. v. N. L. R. B.*, 200 F.2d 43, 45 (7th Cir. 1952), the court held that in resolving the status of an employee who contended he was absent due to illness, the employee's "reasonable expectation of employment within a reasonable time in the future" must be examined. *See also N. L. R. B. v. Atkinson Dredging Co.*, 329 F.2d 158, 161 (4th Cir.), *cert. denied*, 377 U.S. 965, 84 S.Ct. 1647, 12 L.Ed.2d 736 (1964).

**3.** Employees who have been laid off or are on leave of absence are eligible to vote if the "employee had at the time of the election a reasonable expectation of re-employment within a reasonable time in the future." *N. L. R. B. v. Jesse Jones Sausage Co.*, 309 F.2d 664, 665 (4th Cir. 1962); *N. L. R. B. v. Adrian Belt Co.*, No. 76–3422, 578 F.2d 1304, 1308 (9th Cir. 1978); *Westchester Plastics of Ohio, Inc. v. N. L. R. B.*, 401 F.2d 903, 908 (6th Cir. 1968).

We held in *N. L. R. B. v. C. H. Sprague & Son*, 428 F.2d 938, 940 (1st Cir. 1970), that seasonal truckdrivers should be included in the bargaining unit for their off-season status was the functional equivalent of a layoff. Relying on this case and others, the court held in *Knapp-Sherrill Co. v. N. L. R. B.*, 488 F.2d 655, 659–60 (5th Cir.), *cert. denied*, 419 U.S. 829, 95 S.Ct. 50, 42 L.Ed.2d 53 (1974), that seasonal employees who have a reasonable expectation

of reemployment in the future are eligible to vote in a representation election.

**4.** In this case the parties specifically included in the Stipulation for Certification Upon Consent Election employees who did not work during the payroll period due to illness, vacation, layoff, employees in the service, and employees engaged in an economic strike.

**5.** *Trustees of Stevens Inst. of Technology*, 222 N.L.R.B. 16 (1976); *Georgia Pacific Corp.*, 201 N.L.R.B. 831 (1973); *Davis Transp., Inc.*, 169 N.L.R.B. 557 (1968), *enforced sub nom. N. L. R. B. v. Davis Transp., Inc.*, 433 F.2d 363 (6th Cir. 1970); *Dinuba Sentinel and Sentinel Printing and Publishing Co.*, 137 N.L.R.B. 1610 (1962); *W. Wilton Wood, Inc.*, 127 N.L.R.B. 1675 (1960); *Farmer's Rendering Co.*, 115 N.L.R.B. 1014 (1956); *Houston and No. Texas Motor Freight Lines, Inc.*, 88 N.L.R.B. 1462 (1950), *enforced sub nom. N. L. R. B. v. No. Texas Motor Freight Lines, Inc.*, 193 F.2d 394 (5th Cir.), *cert. denied*, 343 U.S. 934, 72 S.Ct. 771, 96 L.Ed. 1342 (1952); *Fall River Gas Works Co.*, 82 N.L.R.B. 962 (1949).

We note that in the Company's discussion of *Trustees of Stevens Inst. of Technology, supra*, the cited portion of the case omits, without the proper indication (ellipsis), a portion of the quoted sentence which we find relevant to the

cases in which the Board followed the date certain test.[6] A review of the applicable case law reveals that the Company's argument concerning Board inconsistency has some merit. However, as discussed above, the reasonable expectation test is most often applied to situations where the employee did not work on the election date. There is no question that both Riley and Costa were employed on the election date.

After reviewing the available case law, we are persuaded that the better and more prevalent standard is the date certain which the Regional Director, hearing officer, and Board applied in their proceedings in this case. Reliance was placed on *Lloyd A. Fry Roofing Co.*, 121 N.L.R.B. 1433 (1958), and we, too, find the case both pertinent and instructive. In *Fry*, the Board held that six employees, rehired as "temporary" were eligible to vote. The employer argued that the employees in question were designated as temporary and did not have the same status and fringe benefits as his permanent employees. The Board rejected this argument, explaining that its decision would not be governed by an employer's classification system, since the Board did not favor allowing the employer unilateral control over voter eligibility. In its holding, the Board adopted the standard articulated in *Personal Products Corp., supra*, 114 N.L.R.B. at 960, explaining:

However, the Board has an established test for determining the voting eligibility of employees whose votes are challenged upon the asserted ground that they are "temporary." The voting eligibility of such disputed workers depends upon their status on the date of eligibility and the nature of their prospects for future employment. Specifically, the Board has held that so-called temporary employees "who are employed on the eligibility date, and whose tenure remains uncertain, are eligible to vote." (footnote omitted). This is the test applicable to the employees challenged by the Employer in this case.

Unlike the Company, we do not read *Fry* as adding an additional reasonable expectation component to *Personal Products Corp., supra*. In its brief, the Company focuses on but one aspect of the relevant section in *Fry*. We believe that, read as a whole, *Fry* stands for the same date certain test that was enunciated in *Personal Products Corp.*

Recently, the Board applied the date certain test in two cases similar to this one. In *M. J. Pirolli & Sons*, 194 N.L.R.B. 241 (1972), *enforced without published opinion sub nom. N. L. R. B. v. M. J. Pirolli & Sons*, 80 L.R.R.M. 3170 (1st Cir.), *cert. denied*, 409 U.S. 1008, 93 S.Ct. 442, 34 L.Ed.2d 301 (1972), the Board concluded that two employees should be included in the determi-

discussion. The Company's version reads, "an individual hired with the understanding he was to replace a professor on sabbatical and that reappointment was not possible was 'merely [a] temporary employee who, on the eligibility and election dates, had *no reasonable expectancy of further employment*'." (emphasis in original).

The language used in the case is that the individual teacher "was merely a temporary employee *for a specified limited duration and*, on the eligibility and election dates, had no reasonable expectancy of further employment." (italicized section indicates omission).

The employee in *Trustees* was told when hired, and it was his understanding at the time of the election, that his job was for one year only. We view this case as one consistent with the date certain test.

We suggest that the Company's reliance on *Georgia Pacific Corp., supra*, 201 N.L.R.B. 831, is misplaced. That case dealt with the voting eligibility of college students who worked as

replacements for vacationing employees during the summer. It has long been established that student summer employees as a class are treated differently than other employees for voter eligibility purposes. *See N. L. R. B. v. E. V. Williams Co.*, 432 F.2d 557 (4th Cir. 1970); *N. L. R. B. v. Sandy's Stores, Inc.*, 398 F.2d 268 (1st Cir. 1968); *N. L. R. B. v. Joclin Mfg. Co.*, 314 F.2d 627 (2d Cir. 1963); *Pacific Tile & Porcelain Co.*, 137 N.L.R.B. 1358 (1962). The rule is summarized in *Sandy's Stores, supra*, at 272, "Indeed, the Board's rule as to students is that those working for the summer with the intention of returning to school are ineligible to vote in an election." Of practical necessity in these student employee cases is an examination of their intentions and expectations. This examination is not called for in this case.

6. *Lloyd A. Fry Roofing Co.*, 121 N.L.R.B. 1433 (1958); *Personal Products Corp.*, 114 N.L.R.B. 959 (1955).

nation of the majority status of a bargaining unit, despite the employer's contention that they were temporary employees. One employee, when hired, advised the employer of his attempts to secure a position with the state police force and told the employer his work would last until he was hired by the state police. The other employee informed the hiring employee that he would work until spring. The Board held that, since there were "no definite terminal dates upon their employment," *id.* at 250, their voices should be included in the makeup of the bargaining unit.

The Board adopted the administrative law judge's ruling that the temporary employee in *Emco Steel Inc.*, 227 N.L.R.B. 989 (1977), *enforced without published opinion sub nom. N. L. R. B. v. Emco Steel Co.*, 95 L.R.R.M. 3011 (2d Cir. 1977), should be included in the bargaining unit. While the employee's regular place of employment was on strike, he accepted a job with Emco, limited specifically to the duration of the strike. The Company argued that the authorization card should not be counted for both the employee and the president of the company knew of the ephemeral nature of the arrangement. Further, the company highlighted the facts that the employee received no fringe benefits, took a substantial pay cut, and borrowed company tools, since his own were left at his former job site. The Board held that he was not an ineligible temporary employee because he had not been hired for a set term or hired to perform a specific project.

Under the date certain test, an employee may be fully aware that his or her employment will be short-lived, but, as long as no definite termination date is known and the employee was employed on the eligibility and election dates, he or she will be eligible to vote. We feel that this test avoids the mind reading and subjective fact finding problems engendered by the reasonable expectation standard.

Moreover, the date certain standard is fully in keeping with the Board policy of including in a unit those employees who share a community of interest. "Eligibility

to vote depends on whether an employee is sufficiently concerned with the terms and conditions of employment in a unit to warrant his participation in the selection of a collective bargaining agent." *Shoreline Enterprises of America, Inc. v. N. L. R. B.*, 262 F.2d 933, 944 (5th Cir. 1959); *Westchester Plastics of Ohio, Inc. v. N. L. R. B., supra*, 401 F.2d at 907; *N. L. R. B. v. Certified Testing Laboratories, Inc.*, 387 F.2d 275, 277 (3d Cir. 1967). An employee who works during the payroll period and whose affiliation with the employer is of an unspecified duration is naturally concerned with the terms and conditions of his/her employment.

The Supreme Court held in *N. L. R. B. v. Fansteel Metallurgical Corp.*, 306 U.S. 240, 257, 59 S.Ct. 490, 497, 83 L.Ed. 627 (1939), "that the fundamental policy of the Act is to safeguard the rights of self-organization and collective bargaining, and thus by the promotion of industrial peace to remove obstructions to the free flow of commerce as defined in the Act." We are in full agreement with this view, as we recently reiterated in *Trustees of Boston University v. N. L. R. B.*, 575 F.2d 301, 304 (1st Cir. 1978). One of the objectives of the Labor Act is to ensure the prompt determination of labor disputes as the Court noted in *Internation Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. Scofield*, 382 U.S. 205, 213, 86 S.Ct. 373, 15 L.Ed.2d 272 (1965). In *N. L. R. B. v. Chelsea Clock Co.*, 411 F.2d 189 (1st Cir. 1969), we held that the Regional Director improperly conducted a consent election. In passing on the question, we recognized that both consent and stipulation elections afford considerable savings of time and expense. We noted, "In light of the policy of the Act to prevent labor unrest by facilitating the expression of employee choice with respect to a bargaining representative, a procedure which fairly expedites that process is to be encouraged." *Id.* at 192. Consistent application of the date certain standard will foster these goals of promoting industrial peace and the free flow of commerce promptly, since the application of the test is relatively simple, re-

quiring minimal investigation. It concerns us that, as here, the length of time that elapses between a union recognition bid and a final determination is often protracted. We favor clear and uniform voter eligibility standards so that labor and management will be able to determine themselves the employees who are entitled to vote, without the need for recourse to time-consuming adjudicatory proceedings.

We turn now to an examination of the issues in the light of the applicable standard.

## JOSEPH RILEY

Riley had a checkered career with the Company, having worked full time between June, 1973, and April, 1974, and then part-time for the last two months in 1974. Riley returned to the Company in March of 1976 as a replacement for Frederick Mitchell. Mitchell was a full time employee who left work indefinitely due to illness. Riley made inquiries about Mitchell's health in April and May and was told by the Company that the date of Mitchell's return was not known.

The Regional Director found that, under the test set out in *Lloyd A. Fry Roofing Co., supra,* 121 N.L.R.B. at 1437, Riley was entitled to vote since he was employed on both the eligibility and election dates and his tenure of employment remained uncertain.

The Regional Director noted that Riley did not participate in the Company's insurance program. Unlike his fellow workers, he was told when hired that he would be given time off if there was not sufficient work. However, the Regional Director found that he performed the same type of work as other production employees, received the same rate of pay, and worked all but one day during the period in question.

The .Company filed its exceptions to the Regional Director's Report. First, it charged that the Regional Director erred in finding that Riley was informed when hired that he was replacing Frederick Mitchell, who was absent due to illness. The Company stressed that Riley was told specifically that his employment would last *until* Mitchell returned and not, as the Regional Director found, that Riley would lose the job *if* Mitchell returned.

The second point raised as error by the Company was the Regional Director's finding that Riley received the same pay as the other production employees. The Company asserted that, due to his temporary status, Riley received a "substantially different rate" of pay.

The last exception was more general. The Company claimed that the Regional Director's determination of Riley's status was "apparently based largely upon evidence, taken ex parte, that is contradicted in some respects by evidence submitted by the Employer."

The Board concluded that the Company was not entitled to a hearing, since its exceptions presented no substantial and material issues, and the challenge to Riley's ballot was overruled.

We find no merit in the Company's argument that a hearing was mandated. The N.L.R.B. has broad discretion in deciding this question. *N. L. R. B. v. S. Prawer & Co., supra,* No. 78–1030 at 1102; *Solon Mfg. Co. v. N. L. R. B.,* 544 F.2d 1108, 1110 (1st Cir. 1976). A hearing is required only where substantial and material factual issues exist. 29 C.F.R. § 102.69(d); *Baumritter Corp. v. N. L. R. B.,* 386 F.2d 117, 120 (1st Cir. 1967). The burden was on the Company to present specific evidence to challenge the Regional Director's finding that Riley was an eligible temporary employee. The offer of proof necessary to require a hearing must be based on more than a difference of opinion with the Regional Director's inferences and conclusions. It must point to specific evidence which will be presented to controvert these findings. *N. L. R. B. v. Target Stores, Inc.,* 547 F.2d 421, 425 (8th Cir. 1977). In this circuit, we have stressed that the evidence must be such that it would prima facie warrant setting aside the election. *N. L. R. B. v. O. S. Walker Co., Inc.,* 469 F.2d 813, 818 (1st Cir. 1972). The Board decided that the excep-

tions did not meet these requirements and we agree.

First, whether the Regional Director was correct in finding that Riley was told his position was good *until* Mitchell returned or *if* Mitchell returned would not warrant setting aside the election. So long as Riley's tenure of employment remained uncertain at the time of the election, he was eligible to vote. Even if the Company were to prove that the Regional Director erred, the outcome would remain the same.

Second, that Riley received a rate of pay different from that of the permanent employees would likewise not affect the court's decision. The Company set Riley's wage. Permitting this pay differential to block the employee from voting would vest in the employer unilateral control over voter eligibility. In *Fry, supra,* 121 N.L.R.B. at 1437, the Board gave no weight to the employer's argument that his "temporary" employees did not enjoy the same status and fringe benefits as permanent employees. The Board rejected the employer's argument, since it did not relish abnegating its authority and giving complete deference to employer controlled classifications. *See also J. P. Sand & Gravel Co.,* 222 N.L.R.B. 83 (1976), where the Board rejected the employer's contention that two workers were ineligible temporary employees since, at the time of the election, they were not covered by company insurance. The Board found that by the date of the hearing, one employee was insured and the other's papers were being processed. The Board explained at 84 footnote 2:

> Furthermore, regardless of the employees' status under the employer's insurance program, it is clear that under Board criteria both employees are not temporary employees. Both employees work a regular part-time schedule, perform duties that are a regular part of the Employer's operation, and have no definite or contemplated date of termination. (citations omitted).

The third exception to the Regional Director's Report is cast in terms so vague and general that we cannot fathom the purported basis of the Regional Director's error. The exception does not pass muster under *O. S. Walker Co., supra,* 469 F.2d at 818.

We, likewise, reject the Company's theory that, since this election was a close one, the prima facie standard should be relaxed. *N. L. R. B. v. Gooch Packing Co.,* 457 F.2d 361 (5th Cir. 1972), cited to support this proposition by the Company, is not apposite. In *Gooch,* the election results were questioned because of allegedly misleading preelection union activity. Here, there is no such shadow cast upon the election itself. This case turns on the classification of two employees. Thus, for our purposes, the closeness of the vote is relevant only insofar as it mandated an investigation into the election by the Regional Director. For these reasons, we conclude that the Board's rulings as to Riley's voter eligibility were correct and the Board did not abuse its discretion in refusing to grant an evidentiary hearing.

### NICHOLAS COSTA

Costa, too, worked for the Company at varying intervals. He was a full time employee in 1975 for eight to ten weeks, was called back to work part-time in February of 1976, but stayed only about one week. The Company rehired Costa in early April of 1976 to replace a full time worker, Carl Strianese, who had left the Company, Costa was employed on April 20, 1976, the eligibility date, but was discharged on April 26, 1976. He was rehired two days later, and worked on June 4, 1976, the date of the election.

In May, Costa noticed a newspaper advertisement placed by the Company which described an opening for his position. Costa spoke to management and was informed that a replacement for him was sought. On June 7, 1976, Costa was discharged and an employee from another department took his place.

After conducting a hearing on Costa's employment status, the hearing officer recognized that there was a wide gulf between the testimony of the witnesses for the Com-

pany and for the Union concerning Costa's awareness of his employment status. The Company's witnesses testified that Costa was told repeatedly of his temporary status, that he was clued into his imminent termination by the newspaper advertisement, and that he did not share in the benefits of a permanent employee. Costa staunchly maintained that he was never told that he was a temporary employee, and that he did not share in the Company's insurance plan because the Company was dilatory in processing his papers.

The hearing officer found that Costa was an eligible voter, since, despite the knowledge of the Company's solicitation of a replacement, at the time of the election, Costa did not know when his employment with the Company would end. The hearing officer found that Costa performed the same work at the same pay as the permanent stripper, his work was regular, and he shared in all employee benefits except insurance. The hearing officer recommended that the challenges to Costa's ballot be overruled, concluding:

> Thus, even assuming that Costa was, at least after April 28 a temporary employee, his eligibility cannot be in doubt, as the Board has consistently held that even a temporary employee who is employed on the eligibility date *and* on the election date and whose tenure of employment remains uncertain is eligible to vote. *Lloyd A. Fry Roofing Company, et al.,* 121 NLRB 1433, 1437, *Personal Products Corporation,* 114 NLRB 959, 960, *American Oil Company,* 188 NLRB 438, 439–440 (emphasis in original).

The Company took exceptions to the hearing officer's report, but the Board adopted the findings. We affirm, finding that the Board's order was supported by substantial evidence in the record as a whole. The credibility of witnesses is for the Board to determine, and the reviewing court will set aside such findings only when the Board oversteps the bounds of reason. *P. S. C. Resources, Inc. v. N. L. R. B.,* 576 F.2d 380, at 382 (1st Cir. 1978); *N. L. R. B. v. Union Carbide Caribe Inc.,* 423 F.2d 231, 233 (1st Cir. 1970); *N. L. R. B. v. Die Supply Corp.,* 393 F.2d 462, 467 (1st Cir. 1968). *See also N. L. R. B. v. Jack August Enterprises, Inc.,* 583 F.2d 575, at 579 (1st Cir. 1978); *N. L. R. B. v. Blue Hills Cemetery, Inc.,* 567 F.2d 529, 530 (1st Cir. 1977). A finding that neither the Company nor Costa envisioned a definite termination date is a finding that does not overstep the bounds of reason.

The Company argues that Costa's actual knowledge of his employer's efforts to replace him precluded him from voting. However, as the hearing officer and the Board both found, Costa was never aware of a fixed date on which his employment would end. In *Personal Products Corp., supra,* 114 N.L.R.B. at 960, the employer presented the Board with a similar argument and failed. The implicated employee knew that a replacement was sought to oust him from his position, but, because the timing of the ousting was uncertain and since he worked on the eligibility and election dates, he was held eligible to vote. Thus, under the date certain standard, Costa was not an ineligible temporary employee.

The Company posits that *Lloyd A. Fry Roofing Co., supra,* 121 N.L.R.B. 1433, differs from this case, for, in that case, the employees were still employed four months after the election, while Costa was discharged three days after the election. This distinction is of little merit for, what actually happens after the election is of minimal consequence. The Board focuses on the period including the eligibility date and the election date and bases its conclusion on that time span. Post-critical date information cannot be used to color the facts of the case as they stood on the critical date. *N. L. R. B. v. Sandy's Stores, Inc.,* 398 F.2d 268, 272 (1st Cir. 1968); *N. L. R. B. v. Jesse Jones Sausage Co.,* 309 F.2d 664, 666 (4th Cir. 1962); *N. L. R. B. v. Belcher Towing Co.,* 284 F.2d 118, 121 (5th Cir. 1960). In *Farmer's Rendering Co.,* 115 N.L.R.B. 1014, 1016 (1956) cited by the Company, the Board stated: "Accordingly, any change in employment status subsequent to the election is *immaterial* with regard to eligibility in an election." (emphasis added).

■ As a further reason to exclude Costa's vote, the Company argues that, since Costa was discharged between the eligibility date and the voting date, he was ineligible even though he was rehired within two days and worked on the election date. This argument is based on the Company's interpretation of the Stipulation for Consent Election which incorporates standard Board language and provides:

2. ELIGIBLE VOTERS.—The eligible voters shall be those employees included within the unit described below, who were employed during the payroll period indicated below, including employees who did not work during said payroll period because they were ill or on vacation or temporarily laid off, employees in the military services of the United States who appear in person at the polls, employees engaged in an economic strike which commenced less than 12 months before the election date and who retained their status as such during the eligibility period and their replacements, but excluding any employees who had since quit or been discharged for cause and employees engaged in a strike who had been discharged for cause since the commencement thereof, *and who have not been rehired or reinstated prior to the date of the election*, and employees engaged in an economic strike which commenced more than 12 months prior to the date of the election and who have been permanently replaced. At a date fixed by the Regional Director, the parties, as requested, will furnish to the Regional Director an accurate list of all the eligible voters, together with a list of the employees, if any, specifically excluded from eligibility (emphasis ours).

The Company cites no case law to support its argument, and we find neither case law nor logic favoring such a view. The Company would have us ignore the language concerning rehire or reinstatement, since they argue that these words modify only that preceding portion of the sentence dealing with employees on strike. This grammatically strained reading of the sentence is contrary to common sense and Board policy, and we reject the Company's argu-

ment. Reading the sentence in its entirety, we believe that the entire exclusionary clause is expressly limited by the italicized portion. Although Costa was discharged, he was quickly rehired, prior to the election, and, thus eligible to vote.

In *Knapp-Sherrill Co. v. N. L. R. B.*, 488 F.2d 655, 659 (5th Cir.), *cert. denied*, 419 U.S. 829, 95 S.Ct. 50, 42 L.Ed.2d 53 (1974), the court adopted a two-part test as an aid to the interpretation of a stipulation agreement. The court focused first on the parties' intent with regard to the disputed employee. The second inquiry focused on whether the intent is inconsistent with any statutory provision or with established Board policy.

Applying this test to the stipulation in our case, we look first at the parties' intent. There is no evidence as to either parties' intent concerning an employee who is discharged after the eligibility date, but rehired before the election date. Indeed, the section of the stipulation is the standard form recommended for stipulated elections. *See* [1968] 1 Lab.L.Rep. (CCH) ¶ 1206.

Lacking evidence of intent, we turn next to determine what is the Board policy as to employees in Costa's situation, to see whether the Company's argument that Costa should be excluded has merit. We find that it does not. In *Leather by Grant*, 206 N.L.R.B. 961 (1973), the Board found that an employee who was discharged in the middle of the payroll eligibility period, but who was rehired prior to the election, was eligible to vote. Similarly, in *Northern States Beef, Inc.*, 226 N.L.R.B. 365 (1976), an employee who worked on the eligibility date, laid off for a week during a plant shutdown, then reinstated, was eligible to vote. From a reading of these cases, it seems clear that the interpretation which the Company draws from the stipulation is contrary to Board policy.

*The order of the National Labor Relations Board shall be enforced.*