# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2913

_____

New World Communications, doing business as WDAF Fox 4 of Kansas City, Inc.,

        Petitioner,

    v.

National Labor Relations Board,

        Respondent,

American Federation of Television and Radio Artists,

        Intervenor on Appeal.

\*  Petition for Review of an Order of
\*  the National Labor Relations Board.

_____

No. 99-3228

_____

New World Communications, doing business as WDAF Fox 4 of Kansas City, Inc.,

        Respondent,

    v.

National Labor Relations Board,　　　 *
　　　　　　　　　　　　　　　　　　　　 *
　　　　　　 Petitioner,　　　　　　　　 *
　　　　　　　　　　　　　　　　　　　　 *
American Federation of Television　　 *
and Radio Artists,　　　　　　　　　　 *
　　　　　　　　　　　　　　　　　　　　 *
　　　　　 Intervenor on Appeal.　　　 *

_____

Submitted:  September 13, 2000

Filed:   November 27, 2000
_____

Before WOLLMAN, Chief Judge, BRIGHT, and BYE, Circuit Judges.
_____

WOLLMAN, Chief Judge.

New World Communications appeals the National Labor Relations Board's decision to count the outcome-determinative ballot of a temporary employee in a representation election.  We affirm the Board's decision and enforce its order.

## I.

Amanda Jahn was hired in late August of 1998 as a temporary employee until October 30, 1998, while New World searched for a permanent sports reporter for its Fox 4 television station in Kansas City, Missouri.  On October 2, 1998, Ann Carroll signed a contract accepting the position of sports reporter for a three-year term beginning on December 11, 1998.  Thereafter, in early October, Henry Chu, then New World's assistant news director, asked Jahn to continue working until Carroll's starting date.  Jahn agreed to do so, and her termination date was adjusted accordingly.

A representation election was held for New World's employees on January 7, 1999. The election eligibility date was November 13, 1998. New World contested Jahn's ballot. The hearing officer ordered the ballot opened and counted after the uncontested ballots resulted in a tie. Jahn's vote decided the election in favor of the union. New World has refused to bargain in order to test Jahn's eligibility and now petitions for review of the Board's order that it bargain with the union.

At the hearing before the Board, Chu testified that Jahn was primarily interested in filling a vacant news position, that she had repeatedly inquired about what would happen to her once Carroll arrived, and that her job assignments were intentionally skewed toward her strengths by assigning her to human interest or straight news pieces. Chu told Jahn that he did not know what would happen to her but that New World had a good track record of hiring its temporary employees into permanent positions. Jahn received training and assistance in improving the quality of her work from New World. During the months after Jahn was hired, one part-time and two full-time positions for which she was qualified were open at New World. During her employment with New World, Jahn has served as a sports reporter and occasionally filled in on "straight news" stories. She continues to work for New World as a temporary employee. New World has chosen to withhold a decision on her status until after the resolution of this case. Jahn did not testify at the Board hearing.

## II.

We will enforce an order of the National Labor Relations Board so long as the Board has correctly applied the law and substantial evidence in the record supports its findings. See NLRB v. Earle Indus., 999 F.2d 1268, 1271 (8th Cir. 1993). We review an election eligibility decision for abuse of discretion. See Bituma Corp. v. N.L.R.B., 23 F.3d 1432, 1436 (8th Cir. 1994).

New World contends that Jahn's ballot should not have been counted. It argues that she was ineligible to vote in the election because, on the election eligibility date, she had a date certain for termination of her employment and had no reasonable expectation of continued employment.

The Board has employed two tests, the date certain test and the reasonable expectation test, in determining whether a temporary employee who is employed at the time of the election eligibility date and the election is entitled to vote in a representation election. Compare Apex Paper Box Co. v. International Ladies' Garment Workers' Union, 302 N.L.R.B. 67, 68 (1991) (date certain test), with Pen Mar Packaging Corp., 261 N.L.R.B. 874, 874 (1982) (reasonable expectation test). Under the date certain test, a temporary employee is eligible to vote in a representation election so long as her tenure of employment remains uncertain, while an employee who has been given a date certain for termination of her employment is not. See New England Lithographic, 589 F.2d 29, 32 (1st Cir. 1978). Under the reasonable expectation test, an employee is eligible to vote if she has a reasonable expectation of continued employment. See id. The Ninth Circuit in NLRB v. S.R.D.C., Inc., 45 F.3d 328, 331 (9th Cir. 1995), and the First Circuit in NLRB v. New England Lithographic Co., 589 F.2d at 33, adopted the date certain test, while the Second Circuit in Kinney Drugs v. NLRB, 74 F.3d 1419, 1434 (2d Cir. 1996), applied both tests simultaneously.

We need not decide which test is proper, however, because under either test, Chu's testimony is sufficient to support the Board's decision. First, the adjustment of Jahn's termination date, her assignments, and her training, combined with Chu's equivocation about her status once Carroll started and his representations that New World had a history of converting temporary employees to permanent ones, rendered the December 11 termination date uncertain. Second, with its acknowledgment that Jahn knew that New World was considering her for other positions, Chu's testimony establishes that both Jahn and New World recognized that New World had a continuing interest in their employment relationship and is sufficient to establish that Jahn had a

reasonable expectation of continued employment. Because Jahn was apparently being assigned some of the duties of the open positions, New World's argument that her status with regard to them was identical to that of any other applicant is unpersuasive.

New World also argues that the Board improperly considered evidence of Jahn's status after the employment eligibility date to determine her status as of that date. We find nothing in the Board's order to support this contention. The Board did note that Jahn was still employed by New World at the time of the hearing, but it did so only after determining from Chu's testimony that she was entitled to vote.

Finally, New World contends that the Board erred in declining to draw an adverse inference from Jahn's failure to testify at the hearing, arguing that the logical conclusion was that her testimony would have been against the union's interests. We have held that "[t]he failure of a charging party to testify requires an inference that her testimony would have been unfavorable to the General Counsel's case." NLRB v. MDI Commercial Servs., 175 F.3d 621, 628 (8th Cir. 1999). Jahn was not a charging party in this action, however. Moreover, the inference rule "permits an adverse inference to be drawn; it does not create a conclusive presumption against the party failing to call the witness." Rockingham Machine-Lunex v. NLRB, 665 F.2d 303, 305 (8th Cir. 1981). The hearing officer fully credited the testimony of Chu and New World's other witness. If New World had thought that Jahn's testimony would have clarified matters, it does not appear why it could not have called her as a witness. Cf. NLRB v. Color Art, Inc., 932 F.2d 723 (8th Cir. 1991).

The Board's order will be enforced.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.