Kathleen MURRAY

v.

Peter McWALTERS, in his capacity as Commissioner of the Rhode Island Department of Elementary and Secondary Education et al.

No. 2004–107–Appeal.

Supreme Court of Rhode Island.

March 16, 2005.

Melody A. Auger, for Plaintiff.

Anne T. Turilli, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

PER CURIAM.

Kathleen Murray (Murray or plaintiff) comes to this Court contending that she is entitled to a merit pay increase after her employer, the Rhode Island Department of Elementary and Secondary Education (RIDE), declined to implement recommended merit increases for her in two consecutive salary years. The plaintiff brought an action in Superior Court requesting declaratory and injunctive relief, under 42 U.S.C. §§ 1983, 1988, based upon her allegation that RIDE had employed an unlawful regulation to deprive her of her merit increase. Murray appeals from the motion justice's grant of summary judgment in favor of RIDE and the other named defendants, including Peter McWalters, in his capacity as Commissioner of Elementary and Secondary Education (commissioner) and the Rhode Island Board of Regents for Elementary and Secondary Education (board) (collectively defendants).

This case came before the Supreme Court for oral argument on February 3,

2005, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and proceed to decide the appeal at this time. We affirm the judgment of the Superior Court.

## I

## Facts & Travel

The facts of this case are not in dispute. Murray is employed by RIDE as a part-time hearing officer and legal counsel. She has been employed by RIDE since 1989, and, more generally, by the State of Rhode Island since 1983. She is a nonclassified, nonunion employee. Although Murray works only a twenty-hour week, her pay is pro-rated on a full-time state employee's thirty-five-hour work week. Murray's pay was converted into this full-time basis to determine her salary relative to her pay grade. As a RIDE employee in state service for more than ten years, plaintiff also receives a statutory longevity payment in the amount of 5 percent of her base pay.

According to § 3.02 of the board's Personnel Policy Manual (manual), in effect until 1999, Murray was eligible for annual merit pay increases "based on demonstrated superior performance as indicated in * * * her annual performance evaluation." For the 1997–1998 salary year, Murray's supervisor recommended, and RIDE implemented, a 3 percent merit increase based on her performance, pursuant to this provision. The next year, 1998–1999, despite her supervisor's recommendation of a 3 percent raise, RIDE did not imple-

ment any increase. For 1999–2000, Murray's supervisor recommended a 3.5 percent raise, 1.5 percent of which actually was implemented. Murray later was informed that a provision of the manual prohibited the increases because they would have placed her salary beyond the maximum of her pay grade.[1]

Until 1999, § 3.02 of the manual, which governs merit increases, provided:

"The amount of such increases shall be contingent upon the recommendations of the immediate supervisor, the amount of money available and with the approval of the appointing authority. Merit increases shall not be automatic nor shall they exceed the maximum of the assigned range."

Section 4.01 of the manual, adopted in 1999 to replace § 3.02 provides:

"Eligible employees who have demonstrated satisfactory performance * * * will receive an increase in accordance with the Board of Regents Pay Plan. Employee salaries including base pay, educational incentives and longevity pay shall not exceed the maximum of the pay grade * * *. There shall not be any automatic pay increases."

The plaintiff alleged before the Superior Court that § 4.01 was contrary to law because it conflicted with specific statutory directives governing longevity payments for RIDE employees, found in G.L.1956 § 16–60–7.2(a). Section 16–60–7.2(a) states in pertinent part:

"The non-classified employees of the board of regents for elementary and secondary education, except for non-classified employees already receiving longevity increases, shall be entitled to a longevity payment in the amount of five percent (5%) of base salary after ten

---

1. She received 1.5 percent out of the 3.5 percent recommended in 1999–2000 because of the board's upward adjustment to her pay grade in that year.

(10) years of service * * *. The longevity payments shall not be included in base salary."

On cross-motions for summary judgment, the motion justice ruled in favor of defendants, holding that, *inter alia*, there was no conflict between § 4.01 and § 16–60–7.2(a).

## II

### Discussion

"[W]hen reviewing a motion for summary judgment, this Court will 'examine the matter *de novo* and apply the same standards as those used by the trial court.'" *Oyola v. Burgos*, 864 A.2d 624, 627 (R.I.2005) (quoting *Taylor v. Mass. Flora Realty Inc.*, 840 A.2d 1126, 1129 (R.I.2004)). "We will uphold a motion justice's grant of summary judgment when no genuine issues of material fact remain and 'the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *Taylor*, 840 A.2d at 1129). We reiterate that no material facts are in dispute and this case presents only legal questions.

"The law in Rhode Island is well settled that an administrative agency will be accorded great deference in interpreting a statute whose administration and enforcement have been entrusted to the agency." *In re Lallo*, 768 A.2d 921, 926 (R.I.2001). Furthermore, we have accorded such deference "even when the agency's interpretation is not the only permissible interpretation that could be applied." *Pawtucket Power Associates Limited Partnership v. City of Pawtucket*, 622 A.2d 452, 456–57 (R.I.1993).

In this instance, the Legislature entrusted the board with the authority to promulgate and implement § 16–60–7.2. Section 16–60–7.2(b) states "[t]he board of regents is authorized to promulgate regulations implementing the provisions of this section." Furthermore, § 16–60–7 indicates the Legislature's intent to leave salary decisions for RIDE employees in the sole discretion of the commissioner, subject only to the board's approval. Section 16–60–7(a) states that within RIDE:

"the appointment, promotion, salaries, term of service, and dismissal of all professional employees * * * shall be at the pleasure of the commissioner of elementary and secondary education * * *. All professional employees * * * shall not be in the classified service of the state nor be subject in any manner of control by the personnel administrator or by any officer or board other than the commissioner of elementary and secondary education * * *."

Section 16–60–7(b) provides that "[t]he table of organization, as submitted by the commissioner * * * together with the pay ranges, shall be subject to approval by the board of regents." The statute clearly places all authority over the nonclassified RIDE employees in the commissioner, subject only to the board's approval.

We turn to plaintiff's allegation that § 4.01 is in conflict with, and therefore in violation of, § 16–60–7.2(a). Murray relies on the final sentence of that provision for its statement that "longevity payments shall not be included in base salary." Section 16–60–7.2(a). She argues § 4.01, in requiring that "[e]mployee salaries including base pay, educational incentives and longevity pay shall not exceed the maximum of the pay grade," squarely conflicts with the mandate of § 16–60–7.2(a). In so doing, Murray alleges defendants have deprived her of salary increases that she otherwise would have received. Moreover, plaintiff argues, adding longevity payments to her salary in determining her eligibility for merit increases has the same effect as denying her the longevity payments to which she is entitled by statute.

Although RIDE's regulation may be somewhat unfair to Murray, we disagree with her conclusion that it is unlawful. At the outset, we note that the only entitlement to which Murray has a bona fide claim is her longevity pay. With respect to that entitlement, the record establishes that she *always received* her longevity pay. Simply because her merit pay eligibility was affected by the *amount* of her longevity payment does not *ipso facto* mean that she has been denied longevity pay.

Furthermore, we agree with the motion justice that there is no conflict between § 4.01 and § 16–60–7.2(a). The statute merely requires that longevity payments not be included in *base salary.* Section 4.01 states that "salaries including base pay * * * and longevity pay shall not exceed the maximum of the pay grade." It is unfortunate that the board uses the term "salaries" to mean total compensation while using "base pay" to refer to what the statute calls "base salary." Nonetheless, it is entirely clear that the board's regulation does not conflict with the mandate of § 16–60–7.2. Although § 4.01 does calculate "salary" by including longevity pay, this is merely a poor word choice, and the record is clear that no longevity pay is included in "base salary" or "base pay."

■ Murray presents some additional arguments. First, she argues that because § 4.01 states that "[e]ligible employees who have demonstrated satisfactory performance * * * *will* receive an increase," she is entitled to a merit increase. (Emphasis added.) Second, plaintiff relies on various parallel statutes and personnel regulations to support her argument that § 4.01 is contrary to law. These arguments need not detain us long.

■ With respect to the former argument, plaintiff reads too much into a single word in the statute: "will." Although it appears that § 4.01 makes merit payments automatic by using that term, the rest of the regulation makes clear that plaintiff's interpretation is nothing more than wishful thinking. The regulation states clearly that salaries cannot exceed the maximum of the pay grade *and* that there are no automatic pay increases. Indeed, even former § 3.02 included the same provisions.

As for the latter argument, plaintiff's string of citations tends to establish that § 4.01's treatment of longevity payments is at odds with that of other areas of Rhode Island government. The plaintiff first cites to G.L.1956 § 36–4–16.3, governing establishment and revision of salaries of unclassified employees, which states that "unclassified employees shall be entitled to all *monetary additives* accorded other state employees, *including, but not limited to, longevity* * * *." (Emphases added.) Section 36–4–16.4(b), which provides for the establishment of salaries for directors of state departments and judges, states that "[e]ach salary determined by the [unclassified pay plan board] will be in a flat amount, exclusive of such other monetary provisions as longevity, educational incentive awards, or other *fringe additives* * * *." (Emphasis added.) Perhaps most persuasively, plaintiff cites the Department of Administration Personnel Rules and Regulations, §§ 4.062 and 4.0621. Section 4.062 sets out the formula for longevity increases, specifically defining them as a "percentage increase on gross rate." Section 4.0621 defines gross rate as "the base rate as it appears in the pay grade plus shift differential, charge duty and incentive awards." Thus, it is clear that in other areas of our state government, longevity is treated as a distinct *additive* to employee salary, rather than a component thereof.

Nonetheless, the procedures and policies of other departments are of little help to plaintiff. As quoted above, § 16–60–7 clearly places all authority over the non-classified RIDE employees in the commissioner, subject only to the board's approval. Moreover, the Legislature specifically exempted RIDE employees from control by any other state authority, *especially the personnel administrator. Id.* Therefore, plaintiff's citations to parallel statutes and personnel regulations, although compelling, are without merit.

Accordingly, giving appropriate deference to the board and in light of the commissioner's plenary authority over salaries, we conclude that there is no conflict between § 4.01 and § 16–60–7.2(a). The regulation implements a permissible interpretation of the statute, and the defendants have not deprived Murray of any entitlement. Because our decision on these issues forecloses any basis for Murray to proceed with her constitutional claims, we need not take up the parties' additional arguments. Finally, we would be remiss if we did not stress our empathy with the plaintiff's situation, for as Abraham Lincoln once said, "[l]abor is the superior of capital and deserves much the higher consideration." [2] In view of that consideration, although we defer to the defendants' interpretation of the statute, we invite the board to revisit its tortured regulation and to make it more consistent with practices elsewhere in our state government.

### Conclusion

For the reasons stated herein, we affirm the decision of the Superior Court. The record in this case shall be remanded to the Superior Court.

Justice SUTTELL did not participate.

---

**2.** Abraham Lincoln, Annual Message to Congress (Dec. 3, 1861), *in A Treasury of Lincoln Quotations* 144 (Fred Kerner ed. 1965) (1996).