[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This case comes before the Court on appeal from a decision of the Rhode Island State Labor Relations Board ("Board"), finding that substitute clerks who work more than sixteen weeks in a year for the City of Providence School Department ("Providence" or "School Department") may form a collective bargaining unit. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 FACTS AND TRAVEL
The Rhode Island Council 94, AFSCME, AFL-CIO ("Union") filed a petition on September 12, 2002, to represent Providence's substitute clerks. A substantial number of the substitute clerks showed interest in being represented by the Union.
At a formal hearing on January 23, 2003, before the Rhode Island State Labor Relations Board, the Union presented four substitute clerks as witnesses. The witnesses testified that the substitute clerks work similar hours (Tr. at 9, 37, 44, 51), performed similar office tasks (Tr. at 8-9, 37, 43, 50), and worked in similar office environments. (Tr. at 11, 44.) All substitute clerks receive the same pay at $7.65 per hour with no benefits. (Tr. at 38.) Additionally, they all work under the supervision of Charlene Villa, the chief clerk who is in the human resources department. (Tr. at 13, 19, 36, 47, 53, 70-71.) The Union also demonstrated, through documentary evidence, as well as witness testimony, that many substitute clerks work for a large portion of the year, not just on short-term assignments. (Union Brief to Board, Appendix B.) In fact, many have worked continuously for several years in the Providence School Department. (Tr. at 8, 35, 43, 50.)
The School Department presented the senior executive director of human resources, Don Zimmerman, who testified concerning the nature of the substitute clerks' employment. (Tr. at 64.) He testified that the School Department uses employees called "substitute clerks" for three purposes:
 1) Special Projects — These temporary assignments are very specific and definite, such as a six month project to update files. At the end of the task, the employment ends. (Tr. at 66.)
 2) Vacancies — The substitute clerks fill job openings during the posting, bidding, and recruitment process. Vacancies vary in length. (Tr. at 66-67.)
 3) Absences — The substitute clerks cover regular employees' absences, whether short term for an illness, or longer for maternity or injury. Although these assignments vary in length depending on the type of absence, many last for a significant length of time. (Tr. at 68.)
The Board distinguished between substitute clerks who work shorter periods of time, less than an aggregate sixteen weeks in one year, and those who work long-term, though in different assignments. The Board accordingly found that the substitute clerks who work more than sixteen weeks in the year are not "casual employees" per G.L. 1956 § 28-9.4-2(b)(5) and therefore that they are not excluded from collective bargaining. The Board also concluded that the substitute clerks share a sufficient community of interest to form a bargaining unit.
After the conclusion of the hearing, an election for representation was conducted and resulted in the Union's favor. The Board certified the election results on June 19, 2003. Providence filed its timely appeal of the Board's decision before this Court on July 18, 2003.
 STANDARD OF REVIEW
Rhode Island General Laws § 42-35-15(g) limits the scope of judicial review of agency actions as follows:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, interferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error or [sic] law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
The court reviews questions of fact only to determine whether substantial evidence exists on the record to support the agency decision. Newport Shipyard v. Rhode Island Commission for Human Rights,484 A.2d 893, 897 (R.I. 1984). Substantial evidence is defined as what a reasonable mind might accept to support a conclusion. Newport Shipyard,484 A.2d at 897. It is not enough that the court be inclined to view the evidence differently than the agency. Berberian v. Department ofEmployment Security, 414 A.2d 480, 482 (R.I. 1980). The reviewing court will reverse factual issues only when the record is totally devoid of competent evidentiary support on the record. Milardo v. Coastal ResourcesManagement Council, 434 A.2d 266, 272 (R.I. 1981).
The reviewing court may freely review questions of law to determine what the law is and how it applies to the factual findings. Carmody v.Rhode Island Conflicts of Interest Commission, 509 A.2d 453, 458 (R.I. 1986); Narragansett Wire Co. v. Norberg, 118 R.I. 596, 607, 376 A.2d 1, 6
(1977). However, Rhode Island law clearly instructs that agencies must be accorded deference when they interpret the statutes that they are charged with implementing and enforcing. Murray v. McWalters, 868 A.2d 659, 662
(R.I. 2005) (citing In re Lallo, 768 A.2d 921, 926 (R.I. 2001)).
When a statute is silent or ambiguous, the courts should defer to the agency's legal interpretation. Labor Ready Northeast, Inc. v. McConaghy,849 A.2d 340, 345-346 (R.I. 2004) (citing Barnhart v. Thomas, 540 U.S. 20,157 L. Ed. 2d 333, 124 S. Ct. 376, 380 (2003); Chevron U.S.A. Inc. v.Natural Resources Defense Council, Inc., 467 U.S. 837, 843,81 L. Ed. 2d 694, 104 S. Ct. 2778 (1984)). If the General Assembly does not define a term in a statute, and more than one reasonable interpretation of the term exists, the court should conclude that the term is ambiguous. Labor Ready, 849 A.2d at 345-346. The court must then defer to the interpretation of that term by the agency charged with implementing the statute. Id. at 346. Even if the term could be interpreted in a different way, the Superior Court should still defer to the agency. Murray, 868 A.2d at 662; Labor Ready, 849 A.2d at 346;Pawtucket Power Assoc. Ltd., v. City of Pawtucket, 622 A.2d 452, 456-457
(R.I. 1993).
 INTERPRETING CASUAL EMPLOYEES
The School Department claims that the Board's decision is arbitrary, exceeds the Board's statutory authority, and is affected by error of law. At the outset, the School Department ascribes as error the Board's interpreting "casual employees" narrowly by placing an arbitrary sixteen-week time limit on that category. In so doing, the School Department contends, the Board has exceeded its statutory authority by amending the statute.
The Board argues that it did not exceed its statutory authority by creating a bright line rule that casual employees be considered municipal employees after sixteen weeks of employment in a year. The statute is silent as to any length of employment to determine whether an employee is a "casual employee." The Board maintains that it discerned the legislative intent by looking to the definition of seasonal employees in the same statutory section. Seasonal employees, who work less than sixteen weeks in a year, are excluded from forming a municipal employee bargaining unit. The Board reasoned that casual employees, who work more occasional periods than seasonal employees, must work less than sixteen weeks in a year.
The Court should defer to an agency's interpretations of the statute that it has been charged with implementing and enforcing. Murray,868 A.2d at 662. The Labor Relations Board enforces the Municipal Employees Arbitration Act, § 28-9.4, by governing elections and resolving complaints. Sec. 28-9.4-7; Barrington Sch. Comm. v. Rhode Island StateLabor Relations Board, 608 A.2d 1126, 1130, n. 2 (R.I. 1992). The General Assembly specifically charged the Board with interpreting "casual employees." "The state labor relations board shall, whenever requested to do so, in each instance, determine who are supervisory, administrative, confidential, casual, and seasonal employees." Sec. 28-9.4-2(b)(7).
The term, "casual employees," exists as an exception to the definition of "municipal employee" in § 28-9.4-2(b) as follows:
 "(b) `Municipal employee' means any employee of a municipal employer, whether or not in the classified service of the municipal employer, except:
. . . .
 (5) Casual employees, meaning persons hired for an occasional period to perform special jobs or functions;
 (6) Seasonal employees meaning persons employed to perform work on a seasonal basis of not more than sixteen (16) weeks, or who are part of an annual job employment program;
. . . ."
As the Board points out, the statute is silent as to the length of "an occasional period" or the nature of "special jobs or functions."[1]
Sec. 28-9.4-2(b)(5). There are many reasonable interpretations of these terms. Therefore, this Court should defer to the Board's interpretation if it is reasonable. Labor Ready, 849 A.2d at 345-346 ("But when `the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference as long as that construction is not clearly erroneous or unauthorized.'") (quoting In ReLallo, 768 A.2d at 926). Unless a contrary intent is clearly shown on the face of the statute, the plain and ordinary meaning of the statutory terms indicates the Legislature's intended meaning. Volpe v. StillmanWhite Co., 415 A.2d 1034, 1035-1036 (R.I. 1980) (interpreting the word "leg" in the Workers Compensation Act as "including the knee, thigh, and foot" based on the common usage). Agencies may consider other sections of the law or reference materials when interpreting an ambiguous statute.Labor Ready, 849 A.2d at 346 (deferring to the Department of Business Regulations' consultation of the Uniform Commercial Code and Black's LawDictionary to define "instrument" in G.L. 1956 § 19-14-1).
This Court is mindful of the definition of "occasional" from The NewWebster's Dictionary and Thesaurus (1992), which definition the Board presented to this Court. (Board's Brief at 4) ("occurring at irregular intervals of some length"). The Board's conclusion that the substitute clerks did not work occasional periods and thus were not casual employees comports with the dictionary definition of those terms. In its decision, the Board looked to the statute for guidance, specifically to the definition of "seasonal employees" in the same section. Casual employment may reasonably be considered more occasional than seasonal employment. Then, since seasonal employment is defined in the statute as no more than sixteen weeks long, casual employment would also be less than sixteen weeks long. Accordingly, this Court both gives deference to the Board's interpretation of "casual employees" and finds no reversible error of law, arbitrary or capricious decision, or excess of statutory authority.
 NON-STATUTORY TERMS
The School Department also argues the Board created and applied certain new employment terms, such as "long-term substitutes" and "floater," into the statute. By interpreting the statute in this way, the School Department claims the Board changed, modified, or amended the statute, exceeding its statutory authority under § 28-7-4. Alternatively, the Board argues that characterizing the employees as "long-term substitute clerks" or "floaters" was merely superfluous. The statute's categories only list employees excluded from the collective bargaining scheme, not employees included. Thus, the Board believes it did not exceed its authority by changing, modifying, or amending the statute.
When interpreting a statute, it is not uncommon to use different words to explain or apply the statutory term. For example, the Rhode Island Supreme Court has used the term "fighting words" to interpret the statutory term "profane." State v. Authelet, 120 R.I. 42, 52, 385 A.2d 642,647 (1978). Similarly, a judge is not limited to the precise language of a statute when instructing a jury, but may explain it in more understandable terms. State v. Pignolet, 465 A.2d 176, 183 (R.I. 1983).
The Board found that substitute clerks do not fit the statutory exception to municipal employees. The additional terms the Board used merely explained the statutory terms in understandable language. The terms, "long-term substitute" and "floater," as used here by the Board, are within the broader semantic range of municipal employees. The Board did not exceed its authority by changing, modifying, or amending the statute.
 SUBSTITUTE CLERKS AS CASUAL EMPLOYEES
Additionally, the School Department argues that the substitute clerks are "casual employees" as defined by § 28-9.4-2(b)(5) and not eligible for collective bargaining. The School Department refers to the record to emphasize that the clerks fill temporary vacancies. (Tr. at 23, 54, 72-73.) The clerks, the School Department notes, are not guaranteed permanent positions and understand that each assignment is temporary when they accept the position. (Tr. at 41, 53.) The School Department further argues that the definition of "casual employees" should follow the federal definition of "temporary employees," who are hired to work until the completion of a specific project. The substitute clerks are like temporary employees in the federal system, according to the School Department, because their positions have a certain ending — when the vacancy is filled or the absent employee returns. Because the Board did not classify these employees as casual employees, the School Department argues that the Board's decision was clearly erroneous in view of the reliable, probative, and substantial evidence.
The Board notes, however, that the documentary evidence shows that although some substitute clerks worked occasional periods to fit the statute's definition of casual employees, many clerks worked more than occasional periods. Of the sixty-eight substitute clerks, twenty-nine worked more than twenty weeks in the twenty-five week period covered by the documents. (Union Brief to Board, Appendix B.) Several clerks worked the same assignment for more than one year and were called back to the same assignment each year. (Tr. at 34, 35.) Additionally, the "layoff" letter that the employees are given at the end of each school year acknowledges that the employees work on a ten month schedule. (Employer Exhibit 1.) The Board contends that it had before it reliable, probative, and substantial evidence that many of the substitute clerks did not work occasional periods and thus are not "casual employees."
Because Rhode Island labor law parallels federal law in many respects, the court looks to federal law for guidance in labor law. DiGuilio v.R.I. Brotherhood of Correctional Officers, 819 A.2d 1271, 1273 (R.I. 2003); MacQuattie v. Malafronte, 779 A.2d 633, 636 n. 3 (R.I. 2001);Bellanger v. Matteson, 115 R.I. 332, 338, 346 A.2d 124, 129 (1975). Federal law has no direct counterpart to Rhode Island's casual employee exception to municipal employees. However, the federal definition of temporary employees is relevant since both are excluded from the collective bargaining unit due to the temporary nature of their employment. See N.L.R.B. v. New England Lithographic Co., Inc., 589 F.2d 29
(1st Cir. 1978); Lloyd A. Fry Roofing Co., 121 N.L.R.B. 1433 (1958);Personal Products Corp., 114 N.L.R.B. 959 (1955).[2] Just because an employee is termed temporary does not necessarily mean that the employee will be automatically excluded from voting. The first circuit relies on the "date certain" test to determine whether a temporary employee is eligible for voting. New England Lithographic, 589 F.2d at 34. Under the "date certain" test, an employee is ineligible for joining the bargaining unit only if there is a known, definite termination date, even if the employee knows that the employment is short-lived. Id. Thus, an employee who would work until spring and an employee who would work until hired by a different employer were both included in the bargaining unit because a definite termination date was not known. Id.
Generally, the clerks do not know why the vacancy was created (Tr. at 18-19, 40, 73, 78), so they likely also did not know the "date certain" for the end of their position. Some of the clerks testified explicitly that they do not know how long their assignments will last. (Tr. at 48;contra Tr. at 56.) One clerk testified that when one assignment ends, rather than losing her position, "Charlene will call me and then the next day I have to move to another school." (Tr. at 41.) Substitute clerks do not know when their employment ends and thus do not satisfy the "date certain" test for temporary employment set forth in N.L.R.B. v. NewEngland Lithographic Co., 589 F.2d 29 (1st Cir. 1978).
Other circuits, most notably the second in Kinney Drugs, Inc. v.N.L.R.B., 74 F.3d 1419 (1996), also use the "reasonable expectation" test. This test requires an eligible employee to have a reasonable expectation of reemployment. Id. at 43-44. The Board found, based on the testimonial and documentary evidence, that the substitute clerks did have a reasonable expectation of reemployment, despite their understanding that the assignments were temporary. The clerks believed that once one assignment ended, they would be moved to another assignment. Thus, the Board's concluding that the clerks met the "reasonable expectation" test is supported by the probative evidence on the record.
The General Assembly has charged the Board with determining who are casual employees. Sec. 28-9.4-2(b)(7). This Court may overturn the Board's decision only if the decision is clearly erroneous in light of the reliable, probative, and substantial evidence on the record. Sec.42-35-15(g). The Board found that the substitute clerks did not have a known, definite termination date. As the Board found, the end of year layoff letter makes it clear that the substitute clerks are actually hired for the full ten-month school year. Although the substitute clerks' individual assignments would come to an end, the Board concluded that their employment continues. The Board found that the clerks reasonably expected reemployment at the beginning of the next academic year. Thus, the Board's concluding that the position of substitute clerk is a permanent position is not clearly erroneous.
 SUBSTANTIAL EVIDENCE
Furthermore, the School Department argues that the Board's decision is clearly erroneous in view of the reliable, probative and substantial evidence presented at the hearing. According to School Department, the four witnesses presented at trial are not enough evidence to support conclusions as to the remaining substitute clerks. The Board argues that its decision was based on substantial evidence. In addition to the four witnesses presented at trial, the Board cites the documentary evidence on the record to establish the working conditions of the other substitute clerks.
Sufficient evidence exists on the record to determine the length and nature of the substitute clerk's employment. The witnesses' testimonies informed the Board as to the nature of a substitute clerk's work, hours, environment, pay and benefits. (Tr. at 8-9, 11, 37-38, 43-44, 50-51.) The Board inferred from the "layoff" letters (Employer Exhibit 1) that the substitute clerks were hired for 10 month periods and expected re-employment between assignments. The Board also had before it the employment records the School Department produced (Union Exhibit B) to show how many substitute clerks worked more than sixteen weeks.
The General Assembly charged the Board with determining what constitutes an appropriate bargaining unit in the context of municipal employees. Sec. 28-9.4-4. The Board is permitted to use its judgment and draw inferences from the evidence presented as to the nature of the entire group. Sec. 42-35-10(d). At the hearing, the Board stated that it would be unnecessary to bring in forty witnesses to present identical evidence regarding the substitute clerks' similar positions, since they were able to make reasonable conclusions based on the testimony of the four witnesses. (Tr. at 59.) The agency also has a duty to exclude unduly repetitious evidence. Sec. 42-35-10(a) ("Irrelevant, immaterial, or unduly repetitous evidence shall be excluded. . . .") The Board does not need to hear testimony from each member of the bargaining unit to verify that every position matches the community of interest. To do so could bog down the hearing with unduly repetitious testimony. Further the Board did not rely exclusively on the four witnesses the Union presented at trial. The Board evaluated the documentary evidence to determine the appropriate bargaining unit.
Also, it is well settled in employment law that the Board's burden to define an appropriate bargaining unit is much less than the opposing party's burden to refute it. "The opposing party faces the more difficult task of showing that the unit is inappropriate." N. Peter Lareau, Laborand Employment Law § 35.01[2] (2005) (citing Panhandle Telecasting Co.,
308 N.L.R.B. 667 (1992)); see Rhode Island State Labor Relations Board Rules and Regulations, Rule 8.02.6(c). If the employer wished to challenge the similarities of the members of the proposed bargaining unit, it should have presented contradictory evidence at the hearing. However, the School Department points out no evidence that the Board should have considered which would imply an incongruity in the bargaining unit.
The Board drew reasonable inferences from the witnesses' testimonies presented at trial. The Board also relied on the documentary evidence on the record when determining the nature of the substitute clerk's employment. This Court is satisfied that the Board's decision was based on the reliable, probative, and substantial evidence before it.
 COMMUNITY OF INTERESTS
The School Department finally argues that the Union failed to demonstrate that substitute clerks share a sufficient community of interests to form a bargaining unit. The Union has the burden to present sufficient, reliable evidence to demonstrate that the proposed unit is appropriate for bargaining and meets the statutory requirements. The School Department contends that the Union failed to meet its burden here. The Board argues that the evidence establishes that the substitute clerks share a community of interests with each other. They each perform similar tasks, work similar hours in similar locations, and receive similar pay and benefits.
The record shows that the clerks all earn the same pay rate at $7.65 per hour. (Tr. at 38.) None of them receives holiday pay, sick leave, vacation, health insurance or any other benefit. Id. They all work in similar offices of the Providence School Department. (Tr. at 11, 44.) They all performed similar clerical tasks. (Tr. at 8-9, 37, 43, 50.) The clerks also worked similar hours. (Tr. at 9, 37, 44, 51), and the same supervisor assigned them their tasks. (Tr. at 13, 19, 36, 47, 53, 70-71.)
The Board must determine what constitutes an appropriate bargaining unit. Secs. 28-7-15, 28-9.4-4 "In making such a determination, the board is not required to choose the most appropriate bargaining unit but onlyan appropriate bargaining unit." R.I. Pub. Tel. Auth. v. R.I. Labor Rel.Bd., 650 A.2d 479, 486 (R.I. 1994) (emphasis in original). The Rhode Island Supreme Court relies on the "community of interest" test to determine what may constitute an appropriate bargaining unit. Id.
Specific factors are used to determine whether a community of interests exists among the members of the proposed unit. Id. The factors are these:
 "1. Similarity in scale and manner of determining earnings,
 2. Similarity of employment benefits, hours of work, and other terms and conditions of employment,
3. Similarity in the kind of work performed,
 4. Similarity in the qualifications, skills, and training of the employees,
 5. Frequency of contact or interchange among employees,
6. Geographic proximity,
7. Continuity or integration of production processes,
 8. Common supervision and determination of labor relations policy,
 9. Relationship to the administrative organization of the employer,
10. History of collective bargaining,
11. Desires of the affected employees, and
12. Extent of the union organization."
Id. (citing N.L.R.B. v. Saint Francis College, 562 F.2d 246, 249 (3d Cir. 1977); Robert A. Gorman, Basic Text on Labor Law, Unionization, andCollective Bargaining, 69 (1976)). All of these factors are relevant and no one factor is determinative. State Farm Mut. Auto. Ins. Co. v.N.L.R.B., 411 F.2d 356, 358 (7th Cir.) (en banc), cert. denied,396 U.S. 832, 24 L.Ed. 2d 83, 90 S. Ct. 87 (1969). Similarly, the absence of one or more of these factors does not preclude the Board from finding a bargaining unit. Libbey-Owens-Ford Co. v. N.L.R.B., 495 F.2d 1195, 1200
(3rd. Cir.), cert. denied, 419 U.S. 998, 42 L. Ed. 2d 272, 95 S. Ct. 313
(1974).
The Board's finding based on the evidence presented to it that the employees share a community of interests is supported by the reliable, probative, and substantial evidence that was before it. While some elements, such as frequency of contact among the employees, or a history of collective bargaining, may not be evident in this case, many elements were clearly established. The Board found, based on the record, that the substitute clerks received similar pay and benefits, had similar terms and conditions of employment, and performed similar tasks. The clerks worked under the same supervisor and administration. They worked in similar office environments in relative geographic proximity to one another (the city of Providence). They expressed a similar desire to form a collective bargaining unit. Accordingly, the Board's finding that the clerks were not casual employees is based on the reliable, probative, and substantial evidence on the record.
 CONCLUSION
After review of the entire record, this Court finds the Board did not commit reversible error of law, exceed its statutory authority, or act arbitrarily or capriciously by interpreting "casual employees" as working less than sixteen weeks per year or by referring to the employees as "long-term" employees or "floaters." The Board relied on the testimony of witnesses and on documentary evidence to determine that these substitute clerks were not "casual employees" within the meaning of § 28-9.4-2(b)(5) and did share a community of interest to form a bargaining unit. Finding the Board's decision was based on the reliable, probative, and substantial evidence, this Court hereby affirms it. Substantial rights of the School Department were not violated. Accordingly, petitioner's appeal is denied. Counsel shall submit the appropriate judgment for entry.
[1] The parties do not question that the regular office work the substitute clerks perform is not a special job or function. Therefore, the only question is whether the substitute clerks work "occasional periods." Sec. 28-9.4-2(b)(5).
[2] The federal cases regarding temporary employees all address whether the temporary employees share a sufficient community of interests with regular employees to join the regular employees' bargaining unit. This court has neither found nor been presented with a case wherein the proposed bargaining unit was to be comprised entirely of temporary employees. To this end, the court is mindful that the Board need only determine an appropriate bargaining unit, not the most appropriate bargaining unit. R.I. Pub. Tel. Auth. v. R.I. Labor Rel. Bd., 650 A.2d 479,486 (R.I. 1994) (emphasis in original). Additionally, since the Board determined that the substitute clerks are not temporary employees, that situation has not arisen in this case.