DECISION
This is an appeal from a December 8, 2004 Report and Order (the decision) issued by the Rhode Island Division of Public Utilities (PUC) against John Rocchio Corporation (Rocchio). The PUC fined Rocchio $1000 for its failure to exercise reasonable care when working in close proximity to underground public utility facilities in violation of G.L. 1956 § 39-2.1-10, and for failure to properly maintain markings on Route 117 in violation of §39-1.2-12.[1] Rocchio took a timely appeal from the ruling, contending that the PUC misconstrued chapter 1.2 of title 39 of the Rhode Island General Laws, entitled the "Excavation near Underground Utility Facilities" Act, otherwise known as the "Dig Safe" law. For the foregoing reasons, the Court denies Rocchio's appeal and affirms the decision of the PUC hearing officer. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 Facts and Travel
Rocchio was hired to install a sewer main of thirty inches in diameter to run along Washington Street, Route 117, in Coventry, Rhode Island. Hearing Transcript (Tr.) dated June 28, 2004, at 6. The project required Rocchio to excavate the street after Telecommunication Company Verizon New England d/b/a Rhode Island (Verizon) first marked out the location of its telecommunication lines. Id. at 7, 78. Verizon contracted with On Target Utility Services (On Target) to perform the task of marking its lines.Id. at 52 and 79.
On December 19, 2004, in accordance with § 39-1.2-5, the so-called Dig Safe law, Rocchio gave notice to the Dig Safe Association that it would be excavating the roadway. Tr. at 100. On December 23, 2003, On Target marked the disputed area and videotaped the markings that it made. Id. at 56 and 92. Rocchio did not request any additional markings of the area between December 23, 2003, and January 7, 2004, the date of the accident.
On January 7, 2004, an individual operating a Komatsu excavator on Rocchio's behalf pierced a cement duct bank. Id. at 67. As a result, various cables belonging to Verizon were damaged and severed. Id. On January 15, 2005, the PUC sent a notice entitled "Report of Dig-Safe Probable Violation and/or Damage to Underground Facilities" wherein it asserted that both Rocchio and Verizon had violated various provisions of § 39-1.2. SeeDecision at 1.[2] The PUC conducted an informal hearing on March 3, 2004 and determined that Rocchio, not Verizon, was responsible for the incident and fined the company $1000. Id.
Rocchio rejected those findings and requested a formal evidentiary hearing on the matter, which was held on June 28, 2004. Id. and Tr. at 1.
Rocchio presented two witnesses at the hearing, Eric Buchanan (Buchanan) and Terrence Sylvester (Sylvester). Verizon offered testimony from Russell DeGraw (DeGraw) and also recalled Sylvester to testify on its behalf.
Buchanan, Rocchio's superintendent at the work site, testified: "We had started the installation of that main probably about 2,500 feet down the road from the hit and had been working alongside of this Verizon line and the other utilities, the water main, for 2,500 to 3,000 and parallel to it for probably a good couple of months or so." Tr. at 5 and 7. According to Buchanan, the standard in the industry required that the pavement above the Verizon line be marked with orange hash marks measuring the diameter of the utility plus eighteen inches on either side of the utility. Id. at 8. He further stated that in the area of the accident there were only two single orange lines which were approximately seventy feet apart. Id. 11. Counsel for Rocchio offered photographs depicting the single orange lines. SeeRocchio's Exhibits 1-10.[3] Two of the photographs show a single orange hash mark and a string that directly connects to a second single hash mark seventy feet away. See Rocchio'sExhibits 1-2; Verizon's Exhibits A-B.
Buchanan stated that Verizon's markings tended to follow the curb line; that is, `[i]f the road curved, the duct bank curved with it." Tr. at 7. He then indicated that when a utility changes in direction, markings usually become "tighter" or closer together. Id. at 12. He further testified, however, that at the site of the accident, "the duct bank does not follow the curb line in that area nor does it follow mark to mark. It actually arcs into the center line of the road." Id. at 34. The marks were not closer together as he would have expected when there is a change in direction. Id.
Buchanan acknowledged that in situations where there are no marks, or where the marks are not visible, it is customary to call Dig Safe for a re-mark of the area. Id. at 49-50. He further acknowledged that "the marks, even though we may be maintaining them or whatever, do get faded" and that they were "working at a time of year that they get faded quick." Id. at 42. After the accident, On Target re-marked the area at seven-foot intervals. Id. at 12. The re-mark was completed by January 8, 2004, one day after the accident. Id. at 23.
On Target employee, Sylvester, testified that On Target serves as a subcontractor who marks out facilities belonging to Verizon.Id. at 52. He stated that it locates the facilities based upon signals that it receives from a transmitter. Id. at 54. Sylvester testified that On Target's standard practice is to place two double-ended arrows locating the actual width of a duct box and then place a hash mark on either side "18 inches out to create a corridor within the structure." Id. at 55-56. He further testified that his company is contractually required to take a videotape of all "locates," and that the December 23, 2003 videotape "shows up and down the street on both ends double arrows." Id. at 56; see also Verizon's Exhibit F.
Sylvester acknowledged that when there's a change in direction, the markings are located closer together, but when there's "a straight line of sight," seventy feet suffices. Tr. at 59. He also stated that "during a remark in heavy construction after damage we'll put a lot more marks down." Id. at 58-59.
DeGraw, a local manager for Verizon, testified that he went to the site of the accident on the day that it occurred and observed the single hash mark on the roadway, "I instantly — my reaction was well, I know duct work is there; there is a mark there. As to why it was only a single line, I didn't actually — I didn't even think about it at the time." Tr. at 80. He later testified that "when I see any orange I know it's Verizon communications or telecommunications stuff. When I see that line, it means somewhere in this approximate area there are facilities." Id.
at 83. DeGraw admitted that other than the markings depicted on the photographs he was shown at the hearing (Rocchio's Exhibits
1-2; Verizon's Exhibits A-B), he had never seen markings with a single hash-mark line, and that On Target's markings generally are more elaborate with two open-ended double arrows. Id. at 83-84.
Verizon then recalled Sylvester to testify. Id. at 84. He testified that the cracks located on each side of the single hash mark were "consistent with the location of the facility." Id.
at 88. When asked about how marks could wear off in a few weeks, Sylvester testified that "[t]raffic, weather, weather close to the day will cause them to be weak and rub off." Id. at 87. He further testified that if there is any doubt about markings, "the responsibility [of the contractor] is to call the utilities and get clearer marks and understanding of the facilities and their placement." Id.; see also § 39-1.2-12.
Verizon offered the December 23, 2003 videotape into evidence, and it was played for the hearing officer while Sylvester testified describing what it depicted. Verizon's Exhibit F andTr. at 92-102. Accordingly, he testified that "on December 23rd there's [sic] two double ended arrows with hash marks on each side." Id. at 98-99. He then indicated some markings near a manhole not far from the accident site, stating "[t]here's a marking here that would depict the two double ended arrows. . . ."Id. at 101. He also pointed out that "this is the duct system with the markings up the street depicting more than one double ended arrow in at least two locations." Id. When asked whether, based upon the videotape, "that conduit [was] accurately marked within the bounds of the law?[,]" Sylvester replied "yes, there were two double-ended arrows placed on the facility beyond Manhole 21 in the direction of the damage." Id. at 102.
On December 8, 2004, the hearing officer issued his decision wherein he concluded that Rocchio had violated § 39-1.2-10 by failing "to utilize non-mechanical means and exercise reasonable care when working in close proximity to Verizon's lines."Decision at 10. He further opined that Rocchio had violated §39-1.2-12 by failing "to properly maintain the markings placed on Route 117 by On Target Services, Inc. on December 23, 2003."Id. He ordered Rocchio to pay a $1000 fine. Id. at 11. The allegations against Verizon were denied and dismissed. Id. From that decision, Rocchio took the instant appeal.
 Standard of Review
The Superior Court reviews the decisions of the PUC and other state administrative agencies pursuant to § 42-35-15. Section42-35-15(g) provides:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or [sic] law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This Court's review of an administrative agency decision under § 42-35-15 is limited in scope. See Mine Safety Appliances v.Berry, 620 A.2d 1255, 1259 (R.I. 1993). It must give great deference to an agency's final decision. See Murray v.McWalters, 868 A.2d 659, 662 (R.I. 2005) ("The law in Rhode Island is well settled that an administrative agency will be accorded great deference in interpreting a statute whose administration and enforcement have been entrusted to the agency.") (quoting In re Lallo, 768 A.2d 921, 926 (R.I. 2001)). Furthermore, "[w]hen a trial court reviews a decision of an agency, the court may affirm or reverse the decision or may remand the case for further proceedings." Birchwood Realty, Inc.v. Grant, 627 A.2d 827, 834 (R.I. 1993) (citing §42-35-15(g)). This Court's review is restricted "to an examination of the certified record to determine if there isany legally competent evidence therein to support the agency's decision." Johnston Ambulatory Surgical Assocs., Ltd. v. Nolan,755 A.2d 799, 805 (R.I. 2000) (emphasis added) (quotingBarrington Sch. Comm. v. R.I. State Labor Relations Bd.,608 A.2d 1126, 1138 (R.I. 1992)).
This Court "`may not, on questions of fact, substitute its judgment for that of the agency whose action is under review,' . . . even in a case in which the court `might be inclined to view the evidence differently and draw inferences different from those of the agency.'" Id. (internal citations omitted). Moreover, "[t]his Court does not substitute its judgment for that of the agency concerning the credibility of witnesses or the weight of the evidence concerning questions of fact." Tierney v. Dep't ofHuman Servs., 793 A.2d 210, 213 (R.I. 2002) (citing Technic,Inc. v. R.I. Dep't of Labor Training, 669 A.2d 1156, 1158
(R.I. 1996)). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. CoastalRes. Mgmt. Council, 434 A.2d 266, 272 (R.I. 1971). It is well settled, however, that "[q]uestions of law . . . are not binding upon the court and may be reviewed to determine what the law is and its applicability to the facts." Narragansett Wire Co. v.Norberg, 118 R.I. 596, 607, 376 A.2d 1, 6 (R.I. 1977).
 Contentions of the Parties and Statutory Construction
Rocchio maintains that Verizon did not mark its underground facility in accordance with the "Dig Safe" Law. It asserts that Verizon failed to mark the outer edges of the duct and then mark an eighteen-inch buffer on each side of the duct markings as required by § 39-1.2-12.[4] Instead, it contends, Verizon simply placed single hash marks 50-70 feet apart with no indication of a change in direction. It maintains that "the duct tank had been following the curb line of Route 117 for 2,500 feet. Yet, at the point of impact, the duct bank veered well off the curb and arched into the center line of the roadway."Rocchio's Brief in Support of its Appeal at 2. In response, Verizon contends that it properly marked the site in accordance with the statute. Verizon further asserts that Rocchio failed to maintain the markings and allowed them to wear away. Verizon'sBrief at 2. The PUC concurs with Verizon's allegations and further asserts that Rocchio "failed to use reasonable care when excavating in proximity to underground utility facilities in violation of § 39-1.2-10." PUC's Brief at 16.
Interpretation of a statute is a question of law. SeePalazzolo v. State ex rel. Tavares, 746 A.2d 707, 711 (R.I. 2000). Where the language of a statute "is clear on its face, then the plain meaning of the statute must be given effect and this Court should not look elsewhere to discern the legislative intent." Retirement Bd. of Employees' Retirement System of Statev. DiPrete, 845 A.2d 270, 297 (R.I. 2004) (internal quotations omitted). When "a statutory provision is unambiguous, there is no room for statutory construction and [this Court] must apply the statute as written." Id. Furthermore, where "the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference, as long as that construction is not clearly erroneous or unauthorized."Labor Ready Northeast, Inc. v. McConaghy, 849 A.2d 340, 345
(R.I. 2004). Bearing in mind the foregoing cannons of statutory construction, this Court will now address and interpret the "Dig Safe" law.
 The "Dig Safe" Law
In 1984, the Legislature enacted the "Dig Safe" law. See
chapter 1.2 of title 39 of the Rhode Island General Laws. It provides that "[n]o person, public agency, or public utility shall engage in excavation in approximate location of public utility facilities . . . without having first ascertained in the manner prescribed in this chapter the location of all public utility facilities or public utilities in the area or the absence thereof." Section 39-1.2-2. Accordingly, the statute requires excavators to give notice to the Public Utilities' Association of any proposed excavation. Section 39-1.2-5. The Association then transmits the information to the public utility companies affected by the proposed excavation. Id.
Once a public utility is served with notice of impending construction, it must "mark the approximate location of the underground utilities." Section 39-1.2-7(a). The "approximate location of underground facilities" is defined as "a strip of land extending not more than one and one-half (1 1/2) feet on either side of the underground facilities." Section 39-1.2-1(2). Telephone and telegraph systems are required to use "Safety Alert Orange" for its markings. Section 39-1.2-7(a). Furthermore, "[i]n the event the excavator shall damage the underground public utility facilities as the result of an incorrect marking by the public utility, the excavator shall not be responsible for the resulting damage." Section 39-1.2-7(b).
It is clear from the foregoing that Rocchio had a duty to inform the Association of any proposed construction, and that the Association then was required to inform Verizon. Once informed, Verizon was required to mark the location of its underground facilities, which it did on December 23, 2003. Once Verizon marked out its underground facility, Rocchio then became responsible for maintaining those markings. See § 39-1.2-12
("After a public utility has marked its underground facilities in accordance with the provisions of § 39-1.2-7, the excavator shall be responsible for maintenance of the designated markings.") Furthermore, "[i]n the event the markings are obliterated, destroyed, or removed, the utility shall, within twenty-four (24) hours following the receipt of a request, remark the location of its facilities." Id. With respect to the excavation work itself, excavators
 "shall exercise reasonable care when working in close proximity to the underground public utility facilities of any public utility. Further, when the facilities are to be exposed, only nonmechanical means shall be employed to locate the facility, and such support, as may be reasonably necessary for the protection of the facilities, shall be provided in and near the work area." Section 39-1.2-10.
In his decision, the hearing officer recounted much of the evidence and testimony offered during the hearing. He then made the following detailed findings:
 "Notwithstanding the testimony of three (3) live witnesses, the Hearing Officer finds the most compelling evidence in this matter to be the videotape which depicts the site in question as it appeared on December 23, 2003. The videotape shows four (4) orange markings which run parallel to each other running up and down Route 117. The orange lines shown on the videotape show two (2) middle lines and lines on either side which depict the eighteen (18) inch perimeter on either side. The Hearing Officer must make the reasonable inference that the single hash marks referred to by Mr. Buchanan and the single lines depicted on Verizon's A and B appear in the deteriorated condition because of adverse weather conditions, vehicle traffic and soil dug up from underneath the pavement on Route 117. As simple as it may seem, the Hearing Officer finds that the orange markings were placed in the approximate location of Verizon's underground facilities in accordance with Rhode Island General Laws § 39-1.2-1(1).[5] The video represents the best evidence in this docket. Once Dig Safe markings are placed at the approximate location of the underground facility, Rhode Island General Laws § 39-1.2-12 dictates that the excavator shall be responsible for the maintenance of the designated markings. The statute states that in the event the markings become obliterated, destroyed or removed, the utility shall within twenty-four (24) hours following the receipt of a request, remark the location of its facilities. No evidence was produced at the hearing which would indicate that [Rocchio] made a request for a remark at any time subsequent to December 23, 2003. The most reasonable inference which can be drawn from the facts presented at the hearing is that the orange markings placed at the worksite on December 23, 2003 became obliterated because of external and adverse weather conditions. In any event, the evidence adduced at the hearing indicates that orange markings are located on either side of the damaged Verizon telecommunications line. Rhode Island General Laws § 39-1.2-10 indicates that `[a]ny person or public agency excavating, tunneling, or discharging explosives shall exercise reasonable care when working in close proximity to the underground public utility facilities of any public utility. Further, when the facilities are to be exposed, only nonmechanical means shall be employed to locate the facility, and such support, as may be reasonably necessary for the protection of the facilities, shall be provided in and near the work area.' The evidence revealed that [Rocchio] was utilizing a Kamatsu excavating machine when the `hit' occurred. There was no evidence presented that non-mechanical means was ever used on the worksite." Decision at 9-10.
The hearing officer then concluded that Rocchio had violated §§39-1.2-10 and 39-1.2-12.
As noted above, Rocchio contends that the single hash marks were substandard because they did not show the boundaries of the underground duct, and because they did not have marks beyond those boundaries. Rocchio further asserts that the marks should have been closer because the duct arced into the center of the street instead of following the curb line as it had done for the previous several thousand feet.
After reviewing the entire record, this Court concludes that the hearing officer did not erroneously construe the "Dig Safe" law, and did not err in finding that Rocchio violated the Act. The record reveals that two faded orange marks approximately seventy feet apart were present on Route 117 on the date of the accident. The record also reveals that when a utility changes in direction, markings are placed closer together; however, it only was the curb that changed in direction, not the utility. Because the subject utility ran in a straight line, closer markings were not required. Furthermore, the videotape shows that on December 23, 2003, Route 117 clearly was marked with duct lines and hash marks in accordance with the statute.
The record further reveals that Rocchio fully was aware that there were telecommunication facilities in the area, but failed to maintain the December 23, 2003 markings, and/or failed to request a remark as required by § 39-1.2-12. Instead, Rocchio ignored the faded hash marks, possibly because it erroneously presumed that Verizon's telecommunication duct continued to follow the curb line. Furthermore, given the presence of orange marks, albeit faded marks, Rocchio was on notice that there were underground telecommunication facilities in the area. Thus, it was required to exercise reasonable care and to employ only nonmechanical means to locate the duct. See § 39-1.2-10. The damage caused by the Kamatsu excavating machine constituted a violation of § 39-1.2-10.
 Conclusion
After review of the entire record, with respect to the findings that Rocchio violated §§ 39-1.2-10 and 39-1.2-12, this Court finds that substantial rights of the Appellant have not been prejudiced. The decision does not violate constitutional or statutory provisions; it is not clearly erroneous and is supported by the reliable, probative and substantial evidence of record. It is neither arbitrary nor capricious. It is not characterized by abuse of discretion, or unwarranted exercise of discretion or affected by error of law. Accordingly, Rocchio's appeal is denied, and the decision of the hearing officer is affirmed. Counsel shall submit the appropriate judgment for entry.
[1] Telecommunication Company Verizon New England d/b/a Rhode Island (Verizon) also was alleged to have violated chapter 1.2 of title 39 of the Rhode Island General Laws. However, the hearing officer denied and dismissed the allegations against Verizon. Because the Appellant failed to include Verizon in the instant appeal, Verizon filed a motion to intervene pursuant to Super. R. Civ. P. 24(a) and b) and G.L. 1956 § 45-35-15(b). The motion was granted by this Court, and Verizon now is a party to this appeal.
[2] The Decision may be found in the record at Tab # 9.
[3] Various exhibits were entered at the hearing, including On Target's December 23, 2003 videotape of the area. Verizon'sExhibit F.
[4] The Appellant suggest that § 39-1.2-12 requires public utility companies to place one-and-one-half feet buffers extending beyond the boundaries of an underground facility. While the language of the statute does not appear to contain such a requirement, in light of this Court's ultimate decision, this issue need not be addressed.
[5] This appears to be a typographical error, as § 39-1.2-1(1) merely defines the Administrator. Section 39-1.2-7, which requires public utilities to mark the approximate location of the underground utilities, more likely is the section that the hearing officer actually meant to cite.